[File No. 7276]

GUY SHAIDE, Respondent, v. E. S. BRYNJOLFSON, Appellant.

(50 NW2d 500)

Opinion filed Dec. 13, 1951

532

*Elmo T. Christianson,* Attorney General; *Paul M. Sand,* Assistant Attorney General, for appellant.

*Walter O. Burk,* for respondent.

BRODERICK, District Judge. This is an appeal taken by the defendant, E. S. Brynjolfson, a deputy state game warden of the state of North Dakota, in a claim and delivery action brought by the plaintiff, Guy Shaide, against the defendant to recover the possession of a Model 99 Savage 22 Hi-power rifle, or its value of one hundred dollars, and in which case judgment was rendered by the district court of Williams County, Ilvedson, Judge, finding that the plaintiff, Guy Shaide, is the owner and entitled to the immediate possession of the said rifle and that said property is unlawfully detained by the defendant, E. S. Brynjolfson.

The trial of the action was had in the district court of Williams County on June 28, 1950, a jury was waived and the case was tried to the court.

Many of the facts in the case were stipulated, and the evidence shows that the plaintiff herein was arrested on the evening of November 13, 1947, at which time his rifle was seized by the defendant Brynjolfson on the ground that he had been shooting deer out of season.

The following morning the plaintiff appeared, in person, and without the services of an attorney, before E. N. Bjornstad, Justice of the Peace, at Arnegard in McKenzie County, to answer to the criminal charge of hunting, killing and carrying away two deer—one buck and one doe—out of season, to which charge he pleaded guilty. The Justice imposed a fine of $75.00 and costs in such criminal action.

Up to that point in the criminal proceedings nothing had been said about the plaintiff's gun that had been seized. The defendant Brynjolfson testified that when he seized the gun he told the plaintiff that it was seized for evidence in court and

that sometimes a gun is confiscated by the court and sometimes it is not.

There is also testimony by the plaintiff to the effect that the game warden at the time of the arrest had told him he would see to it that the gun was returned because of the cooperation given the warden by the plaintiff and some companions.

The testimony further shows that immediately after the plaintiff had been sentenced by the Justice of the Peace, Mr. Brynjolfson called the Justice's attention to the seized gun and urged its confiscation and that the Justice then informed the parties, "Now, we'll hold a hearing for the disposition of the seized firearms."

A certified transcript of the docket of the Justice of the Peace, being plaintiff's exhibit #1, was offered in evidence and reads as follows:

"The following proceedings were had:

"Court opened and defendant and plaintiff were under oath by the court and examined defendant Guy Shaide who answered Guilty of the Crime. Fine imposed $75.00 and costs $3.85 total $78.85. Big Game License revoked. After trial a hearing was held to decide disposition of the seized gun (Savage Model 99 Cal. 22 Hi-power rifle No. 141747). Defendant was present and did agree to said hearing. Arguments were heard from the State and defendant, at the conclusion of which a confiscation order was issued to the State Game and Fish Department. Court closed in due form." There was no transcript of the testimony that was taken before the Justice of the Peace.

It was stipulated by the parties that the plaintiff in this action, Guy Shaide, appeared before the Justice Court, E. N. Bjornstad, of McKenzie County and pleaded guilty to the charge of hunting, taking, killing and carrying away two deer, to-wit: one buck and one doe deer, out of season, on November 13, 1947, in violation of Section 20–0502 of the North Dakota Revised Code of 1943; that the Justice imposed a fine and then orally ordered the gun confiscated; that there were no written proceedings of any kind before E. N. Bjornstad, Justice of the Peace, relating to the confiscation, other than the entries on the docket plaintiff's exhibit #1; that there was no written notice to the defend-

ant of any confiscation proceedings. It was also stipulated that the gun referred to in this action, the Model 99, 22 Hi-power rifle, number 141747 is now in the custody of the Game and Fish Department.

The testimony of the plaintiff in this action, in so far as it is material to a disposition of this case, and as to what transpired in the hearing before the Justice of the Peace, is as follows:

"Q. (By Mr. Burk) Well, tell what took place in Arnegard before the Justice of the Peace when you were there?

"A. (By Mr. Shaide) We were fined for hunting deer, and Mr. Brynjolfson said he was going to make the sentence as light as possible as we were trying to help him all we could, and he said he would get—see to it we would get our guns back for hunting season. The Justice imposed a fine of $75.00 and costs upon us. Mr. Brynjolfson explained that a dollar didn't go far nowdays and that fine was not to high. He then got up and asked Mr. Bjornstad, Judge Bjornstad, if—he asked that the Court—that Mr. Low asked the court to confiscate the guns and now he says you may make your plea, and I made my plea for my gun.

"Q. Did you tell him why you wanted your gun?

"A. I told him why I wanted my gun.

"Q. And after you did that what was said next?

"A. Mr. Bjornstad said that if it wasn't for these guns you boys wouldn't have gotten into this trouble, I'll take your guns away from you.

"Q. Anything else said?

"A. Not that was—that I can recall at the present.

"Q. Was a criminal complaint read to you at that time or any other time?

"A. I don't rightly know. There was—Mr. Bjornstad read the laws for killing a deer under which he could charge from $25.00 to $100.00 for killing a deer.

"Q. Were any papers handed to you at that time or at any other time?

"A. No.

"Q. Were you ever served with a warrant arrest, do you know?

"A. Not that I know of. This was—You might say we went voluntarily to pay our fine, but not to give our guns away."

The testimony of E. S. Brynjolfson, in so far as it is material to this case, is as follows:

"Q. And what is your present occupation?

"A. Deputy Game Commissioner.

"Q. In the instance referred hereto in November, 1947, involving the violation of the hunting laws and the confiscation of a gun, were you acting in your official capacity as Deputy Game Warden?

"A. Deputy Game Warden, yes.

"Q. And from an order of the Justice Court you took possession of this gun?

"A. That's right.

"Q. And you have since then maintained possession of the gun, that is the Game and Fish Department?

"A. Yes, sir."

"THE COURT: (Judge Ilvedson) Now, as long as you are on the stand, I wish you would tell me what happened when this man was picked up. Just tell me a little story about what took place? . . .

"THE WITNESS: Well, it started when I apprehended the boys in McKenzie County. It was after dark, just breaking dark, in fact I just turned my lights on, and at the time that they were apprehended I told them that now, I said, 'These guns must be seized for evidence in Court, and I do not know what disposition will be made of them for the reason that I'm not the Court. Sometimes they are confiscated, and sometimes they are not.' They used me very nicely; I used them just as nicely, and in Court that night—or the next day rather—I was in communication with the Commissioner, and he informed me that inasmuch as this was not only a violation of the game laws, it was stealing from the right-thinking sportsmen, that certainly those guns should be confiscated if at all possible, and I said, 'Well, of course we have to abide by the decisions of the Court, yes.' I so stated that in Court."

"The Court: Then, Mr. Brynjolfson, the next morning when this man appeared before the Justice, do you recall whether the Justice read that to him? (referring to the criminal complaint)

"The Witness: Yes, sir.

"The Court: And tell me what took place as you remember?

"The Witness: Well, they were told of their constitutional rights; that they plead not guilty and secure counsel, or they could take a change of venue, or they could plead guilty.

"The Court: What happened?

"The Witness: Well, they pleaded guilty.

"The Court: They pleaded guilty, and then what did the Justice say next?

"The Witness: After the disposition of the game case he said, 'Now, we'll hold a hearing for the disposition of the seized firearms.'

"The Court: Do you remember what was said?

"The Witness: Well, you understand, Your Honor, there were five of them. I can't remember the exact words.

"The Court: But immediately after each of them pleaded guilty, then did he make that statement?

"The Witness: That's right, after the disposition of the game cases."

"The Court: Did you say anything, or did the defendant say anything?

"The Witness: "Well, we both did. Now, I can't remember just the order, but I believe the defendants endeavored to tell the Judge why these firearms shouldn't be confiscated.

"The Court: And you argued why they should be?

"The Witness: That's it.

"The Court: Then did the Justice make a statement as to what he was going to do?

"The Witness: Well, then, pardon me, if you don't mind, then he gave them another opportunity to overcome some of the statements that I made, see.

"The Court: He let you both talk, in other words, as much as you wanted to talk?

"The Witness: Yes, almost. Yes, but then in the answer to your prior question, the Judge informed them that the fire-

arms would be confiscated and turned over to the Game and Fish Department.

"THE COURT: And that ended the hearing?

"THE WITNESS: That ended the hearing so far as I was concerned. I'll say the boys was there quite a little time talking to the Judge and so forth, but I went ahead and made out the Court Order."

The plaintiff in the case at bar contends that he had the right to bring this claim and delivery action at the time it was commenced, namely on September 3, 1948 and that he was entitled to the immediate possession of the rifle because of the failure of the State to comply with the provisions of Section 20–1003, in that the State failed to serve him with a proper notice of the hearing with reference to the disposition of the gun and that the Justice of the Peace failed to make proper findings in accordance with the provisions of said section.

Section 20–1001 provides as follows: "The commissioner, deputy commissioner, or any bonded game warden shall seize all wild birds, wild animals, or fish, or any part thereof, taken, killed, or possessed, or transported contrary to law, and shall seize all dogs, guns, seines, nets, boats, lights, automobiles, vehicles, instrumentalities, appliances, and devices unlawfully used, or held with intent to be unlawfully used, in pursuing, taking, or attempting to take, concealing, or disposing of wild birds, wild animals, or fish, or any part thereof. All property so seized shall be held subject to the order of a court of competent jurisdiction."

Section 20–1003 provides as follows: "A court having jurisdiction of an alleged offense against any provision contained in this title may make an order directing the sale of all birds, animals, or fish, or any part thereof, or other property which has been confiscated. Such order may be entered only after a hearing duly had upon proper notice to the owner and after due and proper finding by the court that such property: 1. Was taken, killed, possessed, or being transported contrary to law by the person from whom it was seized; 2. Was being used in violation of any of the provisions of this title at the time it was seized; or 3. Had been used in violation of any of the pro-

visions of this title within six months previous to the time it was seized."

Section 20–0101, subdivision 17 provides that: " 'Confiscate' or 'confiscated' shall mean to hold subject to the order of a court of competent jurisdiction."

It will be noted that Section 20–1001 provides: "All property so seized shall be held subject to the order of a court of competent jurisdiction."

On January 13, 1948, the plaintiff, by his attorney, Walter O. Burk, made a written demand upon the defendant, E. S. Brynjolfson, District Game Warden, for the return of the rifle in question to the plaintiff. Thereafter on the 3rd day of September, 1948, the plaintiff brought this action in claim and delivery in the usual form, alleging that he was the owner and entitled to the immediate possession and return of his gun.

At the time of the commencement of such claim and delivery action, the rifle was in the possession of the State Game and Fish Commissioner of the State of North Dakota, and was being held, pursuant to the provisions of Section 20–1001, which provides among other things, that: "All property so seized shall be held subject to the order of a court of competent jurisdiction." Until such order of a court of competent jurisdiction was duly made and entered, the rifle in question, being held subject to the making of such order, was "in custodia legis" and plaintiff could not maintain an action in claim and delivery for the return of the rifle to him.

In view of the facts in this case and the provisions of the statute above referred to, it is not necessary for this court to determine whether the appearance and personal presence of the defendant, Guy Shaide, at the hearing in connection with the disposition of the gun, was a voluntary appearance or not, or whether his actual presence and participation in the hearing waived the provisions of Section 20–1003 as to proper notice and proper findings.

If it be conceded, as it must be, that there was no proper notice of hearing to Mr. Shaide, and that there were no due or proper findings made by the court, and that his personal presence and participation in the hearing was not a waiver of the requirements

of the statute, yet the plaintiff could not maintain his action in claim and delivery on the date it was commenced for the reason that he was not entitled to the immediate possession of the rifle at that time.

Assuming that the proceedings with reference to the disposition of the gun were wholly null and void and of no effect, the Commissioner would still be entitled to the possession of the gun even under the plaintiff's theory of the case, to-wit, that the confiscation does not take place until an order is made by the court.

If the proceedings were null and void, the situation would therefore be the same as if no proceedings were ever brought for the disposition of the gun.

In the case of Thompson v. Grove, 72 Okla. 290, 180 Pac. 553, at page 556, the court said:

"It is a well-settled doctrine of the common law that replevin will not lie for goods in the custody of the law, any interference with goods so held being considered an infringement of the prerogative of the court and a contempt thereof. The reason why property in custodia legis cannot be replevied is that to permit it to be done would be to interfere with the possession before the office of law had been performed as to the process under which it was taken. 34 Cyc 1367; Hagan v. Deuell, 24 Ark 216, 88 Am Dec 769; Powell v. Bradlee, 9 Gill & J (Md) 220.

"In the case at bar, the evidence not showing that the office of the law had been performed as to the writ of attachment under which the goods were taken from the plaintiff, although it was alleged to the contrary, the property was still in custodia legis at the time of the commencement of this action and was therefore prematurely commenced."

See also 46 Am. Jur., Replevin, Section 36, page 23. Under this statement of the law in American Jurisprudence there are numerous cases cited, among which is the case of Welter v. Jacobson, 7 N. D. 32, 73 N.W. 65, in which the court held, that any interference with property that was in the custody of the law would be a contempt of court.

As stated in the case of Lemp v. Fullerton, 83 Iowa 192, 48 NW 1034, 13 LRA 408, "When this action was commenced the

justice's court had jurisdiction of the property in controversy. It was in the custody of the law, subject to the further order of that court."

In the case at bar the property was seized by the game warden, and under the statute was held subject to the order of a court of competent jurisdiction and was, therefore, in custodia legis.

In the case of Gist v. Cole, 10 Am. Dec. 616, at page 620, the court said, "In Bradshaw's case, T. 12 W. 3, mentioned in 6 Bac. 55, and also by Cunningham in his Law Dictionary, it is laid down that wherever an act of parliament orders or directs a distress and sale of goods, it is in nature of an execution, and replevin does not lie for them. So it is laid down in 6 Bac. 56, that replevin does not lie for goods seized by a warrant from a justice of the peace, upon a conviction for the destruction of game, under the authority of an act of parliament; and that it would be considered as a contempt to issue it."

As stated in the above case, claim and delivery will not lie to recover possession of property seized by a game warden pursuant to an act of the legislature.

In view of the facts in this case and the law as above stated, this court must therefore come to the conclusion that the plaintiff was not entitled to the immediate possession of the gun at the time of the commencement of his action in claim and delivery, that he could not maintain such an action and that the action should have been dismissed by the trial court. The Judgment of the District Court is therefore reversed.

Morris, C. J., Christianson, Grimson and Burke, JJ., concur.

Sathre, J., being disqualified, did not participate, Hon. L. C. Broderick, Judge of Sixth Judicial District, sitting in his stead.