The appellants, Grady Gibson and Eddie Hart, appeal from the denial of their Rule 20, A.R.Crim.P.Temp., petitions. The appellants were jointly tried for the murder of Dana Hart. The murder was defined in § 13A-5-40(a)(7), Code of Alabama 1975, as a capital offense, since it was committed to recover the proceeds of a life insurance policy on the life of the victim. Appellant Gibson was convicted of capital murder and was sentenced to life in prison without parole. Appellant Hart was convicted of manslaughter, a lesser included offense of murder, and was sentenced to 50 years in prison.
Appellants argue that this is not a "successive petition" as defined by Rule 20.2(b), A.R.Crim.P.Temp. We agree. This case is here for the second time on appeal from the denial of Rule 20 petitions. Appellants filed their first Rule 20 petitions while direct appeals were pending in this court. We dismissed their appeals from the first Rule 20 petitions because the trial court does not have jurisdiction to hear a Rule 20 petition while the case is on appeal to another court. For these reasons, the present Rule 20 petitions are not successive and are not precluded on that ground.
Both appellants allege in their current Rule 20 petitions that the state failed to disclose exculpatory evidence to them, thus violating the requirement of Brady v. Maryland, *Page 40 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, appellants contend that the state failed to furnish them with copies of a police memorandum prepared, by an ABI investigator, after the interview of Dottie Ragsdale. Mrs. Ragsdale was said to have made statements to the police which tended to show that she was the last individual to see the victim alive. Appellants contend that this testimony was crucial to their defense, saying it would show that they did not have the opportunity to kill Dana Hart. A review of the background evidence in the case will be helpful in understanding the appellants' contention. Between February 20 and 25, 1985, a life insurance policy for $150,000 was obtained on the lives of the victim and her husband, appellant Hart. Testimony at trial showed that the victim had been seen alive as late as February 28, 1985, at 5:00 p.m. It is the time between February 28 at 5:00 p.m. and March 1, 1985, that is at issue here. Mrs. Ragsdale told ABI investigators that she had seen Dana on March 1. She said she felt sure of the date, because on that date she was on sick leave from work. On March 1, 1985, Dana's car was observed in the K-Mart store parking lot in Montgomery, Alabama. It remained there until March 11, 1985. Appellants contend that if Dana was alive on March 1, 1985, they could not have killed her, since they have alibis for March 1 and March 2.
Although appellants' petitions were summarily dismissed, the record contains the transcript of appellants' first Rule 20 hearing. Captain Taylor testified at the first Rule 20 hearing that Mrs. Ragsdale had been interviewed in 1985 about having seen the victim on March 1. He said that after reviewing her work schedule, she said that she had seen Dana Hart on March 1. He also stated that Mrs. Ragsdale changed her story in May of that year, several months after having made the statement. At the time Mrs. Ragsdale changed her statement, she stated that she could have seen the victim the week prior to March 1. (Evidence in the transcript shows that Mrs. Ragsdale had been on sick leave from her work one day during in the week prior to March 1, as well as on March 1. Mrs. Ragsdale's son was also interviewed, and he maintained that Dana had come by their house on February 28, 1985.) We note that Ms. Ragsdale's change in her version of the facts would not foreclose the state's duty to disclose this information to the appellant. See, Exparte Womack, 541 So.2d 47, 65 (Ala. 1988).
Larry Williams, an investigator with the ABI, stated that Gibson supplied him with the names Dottie Ragsdale and David Ragsdale. Testimony from John Perdue, an ABI investigator, showed that Gibson had been told about Mrs. Ragsdale's statement; however, at that time no reference was made to the memo prepared by an ABI investigator.
The following occurred at the Rule 20 hearing:
 "Mr. Clark (attorney for appellant Gibson): Other than a showing to the Court as an officer of the Court that we did not receive this information till sometime after the trial and we were not aware of any of this information in the memos that have been offered. Now I'm telling the court that we did attempt to interview Mrs. Ragsdale and we did have the information with regard to Mrs. Ragsdale having seen Dana Hart sometime during that time frame.
"The Court: All right sir.
 "Mr. Clark: We had that information, but we did not have the memos that have been offered into evidence.
"The Court: All right, sir. Is that all?
 "Mr. Williamson (attorney for appellant Hart): That's basically it. We had knowledge there was a Dottie Ragsdale sometime in the time frame she had seen Dana Hart. But the time we got to her I talked to her two years after the event and a week or so before the trial, we didn't have the information contained in the memos or any access to that particular information. But we do know there was a Dottie Ragsdale. I did subpoena Dottie Ragsdale. She was here at trial. The reason we didn't put her on, she was at that time not clear as to when she said she saw Dana Hart." *Page 41 
It appears to us, after a thorough review of the record, particularly the testimony of the ABI investigators, that although the appellants were never furnished with the memorandum, they were notified that Mrs. Ragsdale had made the statement. It is clear from the record that counsel for both appellants interviewed Dottie Ragsdale prior to the trial. In fact, Dottie Ragsdale was on the appellants' list of witnesses to testify at trial; however, she was never called. As this court stated in the opinion on direct appeal of this case: "The general rule is that the accused is not entitled to discover statements of government witnesses before trial." Gibson v.State, 555 So.2d 784, 791 (Ala.Cr.App. 1989). Furthermore, such memos are excluded from discovery by Rule 18.1(c)(1) and (e), A.R.Crim.P.Temp.
We agree with the trial court's decision denying the appellants' petitions on procedural grounds. It is apparent to us, after a review of the record, that the claimed error raised in both appellants' Rule 20 petitions could have been, but were not, raised at trial or on direct appeal. (Appellants' first Rule 20 petitions, challenging the same issue, were filed on July 7, 1988. This was prior to oral arguments on the direct appeal in this case and prior to the filing of the reply briefs of counsel.) Thus, according to Rule 20.2(a)(3) and (5), A.R.Crim.P.Temp., the issues are procedurally barred on a Rule 20 petition.
Furthermore, it is clear that appellants' grounds would fail even if the court reached the merits of the petitions. Appellants both alleged that the State violated Brady. To violate the discovery rules as articulated in Brady, the state must suppress evidence which is favorable to the defense and the suppression must be of such a prejudicial nature that it undermines the verdict. See Brady.
A review of the evidence, already discussed above, shows that the appellants have not satisfied the requirements ofBrady. The attorneys stated that they knew about Mrs. Ragsdale's statement. Testimony also showed that the appellants subpoenaed Mrs. Ragsdale and talked with her themselves, prior to trial. The record shows that the appellants furnished the ABI investigators with Mrs. Ragsdale's name. Further, as discussed above, the memo itself would not be discoverable, just the contents. Thus appellants' contention would fail on the merits.
For the foregoing reasons, the judgment in these two cases are due to be, and they hereby are affirmed.
AFFIRMED.
All the Judges concur.