**STATE of North Dakota, Plaintiff and Appellant,**

v.

**ONE BLACK 1989 CADILLAC VIN 1G6DW51Y8KR722027, Defendant and Appellee.**

**Civ. No. 930352.**

Supreme Court of North Dakota.

Oct. 3, 1994.

Sidney J. Hertz Fiergola, Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

Thomas M. Tuntland, Mandan, for defendant/owner and appellee.

SANDSTROM, Justice.

The State of North Dakota appeals from a summary judgment dismissing its forfeiture action against a 1989 Black Cadillac. Five and a half months after it seized the Cadillac without a warrant, the State began the forfeiture action under North Dakota's Uniform Controlled Substances Act. The trial court dismissed the forfeiture action because it had not been "instituted promptly" as required by statute. We affirm.

## I

The State's complaint alleges that in February 1992 undercover law enforcement agents bought marijuana at Herb's Lounge, Wilton, North Dakota. In two instances, the Cadillac was allegedly used by its owner, Herbert O'Rourke, to transport marijuana for the purpose of sale.

On March 3, 1993, a law enforcement officer seized the Cadillac without a warrant under the forfeiture provisions of the Uniform Controlled Substances Act (Act). Under the Act, vehicles used to transport controlled substances for the purpose of sale are subject to forfeiture. N.D.C.C. § 19–03.1–36(1)(e). Property subject to forfeiture under the Act may be seized without process if "a law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of [the Act]." N.D.C.C. § 19–03.1–36(2)(d).

The State began a forfeiture proceeding against the Cadillac on August 24, 1993, 174 days after the vehicle had been seized without process. O'Rourke answered the State's complaint and moved to dismiss for lack of jurisdiction. O'Rourke argued the court lacked jurisdiction because the State had not "instituted promptly" forfeiture proceedings as required by N.D.C.C. § 19–03.1–36(3). The State argued the forfeiture action had been instituted promptly. The State claimed the 174–day delay was reasonable because law enforcement and O'Rourke were negotiating O'Rourke's possible cooperation as an undercover informant in a pending criminal investigation.

The trial court dismissed the State's complaint, concluding the forfeiture action had not been instituted promptly:

"As noted, no reason was offered in this case that would have prevented the government from commencing the proceeding. Instead, it attempts to *justify* its failure to act promptly. The government says it delayed in order to make the owner's cooperation more effective.

\*    \*    \*    \*    \*    \*

"As stated, the question to be resolved is not whether delay was 'reasonable' or 'justifiable,' but whether the government complied with the statutory command that it institute proceedings promptly. There was nothing to prevent it from doing so, and the delay of 174 days was not prompt. The owner did not engage in any activity that could be said to create an estoppel or waiver against him."

The State appeals. This Court has jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 28–27–01. The appeal is timely under Rule 4(a), N.D.R.App.P.

## II

■■■ The interpretation of a statute is a question of law, and is fully reviewable by this Court on appeal. *Gabriel v. Minnesota Mut. Fire and Cas.*, 506 N.W.2d 73, 75 (N.D. 1993). In interpreting statutes, we are guided by several principles of statutory construction. In applying a uniform law, we construe its provisions "to effectuate its general purpose to make uniform the law of those states which enact it." N.D.C.C. § 1–02–13. Additionally, we construe statutes

"as a whole to determine the intent of the legislature, deriving that intent by taking and comparing every section as a part of a whole. When the language of a statute is ambiguous or of doubtful meaning, we may look beyond the letter of the statute to ascertain legislative intent."

*City of Bismarck v. Santineau*, 509 N.W.2d 56, 59 (N.D.1993) (citations omitted). Finally,

"if a statute is susceptible of two constructions, one which will be compatible with constitutional provisions or one which will render the statute unconstitutional, we must adopt the construction which will make the statute valid."

*Paluck v. Bd. of County Comm'rs, Stark County*, 307 N.W.2d 852, 856 (N.D.1981).

■■■ Because both O'Rourke and the State submitted affidavits on the motion to dismiss, the motion must be treated as one for summary judgment. Rule 12(c), N.D.R.Civ.P.

"[S]ummary judgment is appropriate only if there are no issues of material fact or any conflicting inferences to be drawn from those facts, and a party is entitled to

judgment as a matter of law. A trial court's decision on a motion for summary judgment is a conclusion of law and is fully reviewable on appeal." (Citations omitted.)

*Moen v. Moen,* 519 N.W.2d 10, 12 (N.D. 1994). The party moving for summary judgment has the burden of demonstrating there is no genuine issue of material fact. *Continental Cas. Co. v. Kinsey,* 513 N.W.2d 66, 69 (N.D.1994). The party opposing the motion for summary judgment cannot rest upon mere allegations or denials in the pleadings, but must respond, showing there is a genuine issue for trial. *Continental Cas. Co.* "Even if factual disputes exist between the parties, summary judgment is appropriate if the law is such that the resolution of the factual dispute will not change the result." *Continental Cas. Co.*

### III

The Uniform Controlled Substances Act authorizes a law enforcement agency to seize property without process when the law enforcement agency "has probable cause to believe that the property was used or is intended to be used in violation of [the Act]." N.D.C.C. § 19–03.1–36(2)(d). The Act directs "[i]n the event of seizure pursuant to subsection 2 [§ 19–03.1–36(2) ], proceedings under subsection 4 [§ 19–03.1–36(4) ] must be instituted promptly." N.D.C.C. § 19–03.1–36(3). Subsection 4, however, does not expressly set a procedure for instituting a forfeiture proceeding. Subsection 4 provides:

"Property taken or detained under this section is not subject to replevin, but is deemed to be in custody of the board or a law enforcement agency subject only to the orders and decrees of the district court having jurisdiction over the forfeiture proceedings as set out in subsection 2 [19–03.1–36(2) ]. When property is seized under this chapter, the board or a law enforcement agency may:

a. Place the property under seal.

b. Remove the property to a place designated by it.

c. Require the attorney general to take custody of the property and remove it to

an appropriate location for disposition in accordance with law."

N.D.C.C. § 19–03.1–36(4).

Procedures for instituting a forfeiture proceeding are contained in N.D.C.C. §§ 19–03.1–36.1 through 19–03.1–36.7, which were added to the Act in 1989. *See* S.L.1989, ch. 268, §§ 2–8. The legislative history shows the 1989 amendments to the Act were designed to establish

"procedures for the forfeiture of property connected with the manufacturing, sale, or transportation of controlled substances, including requiring the filing of a summons and complaint providing notice to the owner and any interest holder in the property of the forfeiture proceedings."

Minutes of Senate Judiciary Committee on Senate Bill 2176, Bill Summary, Prepared by Legislative Council, March 16, 1989. The need for adding a procedure to the statute was explained by an assistant attorney general, who provided written comments and spoke in favor of the amendments. In written testimony, the assistant attorney general explained:

"Although N.D.C.C. § 19–03.1–36 does authorize forfeiture, no specific procedures are set forth in that section. A similar provision has been struck down as unconstitutional by the South Dakota Supreme Court [*State v. Miller,* 248 N.W.2d 377 (S.D.1976) ] in that it did not provide for notice and hearing before forfeiture of property.

\* \* \* \* \* \*

"This bill is intended to establish specific forfeiture procedures to guide both the court and the parties to a forfeiture proceeding and to ensure that the due process rights of the owner of the property to be forfeited, or any person with a legal interest in that property, will be protected."

Minutes of Senate Judiciary Committee on Senate Bill 2176, Summary of Testimony of Robert Bennett, January 11, 1989.

The 1989 amendments provide that property subject to forfeiture under the Act, other than property that may be summarily forfeited, may be forfeited by order of a district court only after:

"1. A written consent to forfeiture executed by the owner of the property and all persons with a legal interest in the property to be forfeited has been filed with the court; or

"2. Commencement of forfeiture proceedings."

N.D.C.C. § 19–03.1–36.1. Forfeiture proceedings begin by the

"filing of a summons and complaint for forfeiture of the property in the district court of the county in which the property was seized, is being held, or is located.... The proceedings must be brought in the name of the state. The complaint must describe the property, state its location, state its present custodian, state the name of each owner if known, state the name of each party with a legal interest in the property if known or of legal record, allege the essential elements of the violation that is claimed to exist, and must conclude with a prayer to enforce the forfeiture. Notice of the forfeiture proceedings must be given to each known owner and known person with a legal interest in the property to be forfeited by serving a copy of the summons and complaint in accordance with the North Dakota Rules of Civil Procedure...."

N.D.C.C. § 19–03.1–36.3.

■ The language of subsections 3 and 4 of N.D.C.C. § 19–03.1–36 is ambiguous as to what procedure must be promptly initiated following a seizure. We conclude, however, reading the statute as a whole, taking into account the legislative history, the procedures contained in §§ 19–03.1–36.1 through 19–03.1–36.7 must be instituted promptly following a seizure under the Act.

IV

A

■ The State instituted proceedings against the Cadillac 174 days after seizure by serving O'Rourke with a summons and complaint for forfeiture. The State argues the 174–day delay was reasonable under the circumstances, and therefore, proceedings were "instituted promptly" under N.D.C.C. § 19–03.1–36(3). The State argues the appropriate analysis for determining promptness is the four-part test first announced by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The *Barker* test was developed to determine whether a defendant's Sixth Amendment right to a speedy trial had been violated. The United States Supreme Court later adapted the four-part analysis to forfeiture cases, concluding the *Barker* test was also appropriate for determining whether the delay between a seizure of property and a forfeiture hearing violated due process. *United States v. $8,850*, 461 U.S. 555, 564, 103 S.Ct. 2005, 2012, 76 L.Ed.2d 143, 152 (1983); *see Commonwealth v. Goldman*, 398 Mass. 201, 496 N.E.2d 426, 427 (1986). The *Barker* test involves a balancing of: (1) the length of delay, (2) the reason for the delay, (3) the conduct of the property owner in pursuing prompt action, and (4) the prejudice to the property owner. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2191–92; *$8,850*, 461 U.S. at 564, 103 S.Ct. at 2012.[1] The factors are related and must be considered together with other relevant circumstances and the trial court must then engage in a difficult and sensitive balancing process. *State v. Presbuch*, 366 N.W.2d 794, 795 (N.D. 1985) (citing *State v. Wunderlich*, 338 N.W.2d 658, 660 (N.D.1983)).

The State contends the "promptness" requirement is included in the forfeiture provision of the Act to ensure compliance with due process, and, therefore, the *Barker* test is the appropriate measure of promptness. *See e.g. State v. One (1) Ford Van, Econoline*, 154 N.J.Super. 326, 381 A.2d 387, 392 (1977) (the

---

**1.** The concurring opinion obscures that, in the *$8,850* case, availability of the administrative proceeding asking for remission or mitigation of the forfeiture was not a factor in determining if the four-part test should be the standard to assess the timeliness of beginning the judicial proceeding. *See $8,850*, 461 U.S. at 562–65, 103 S.Ct. at 2010–13. Rather, the claimant's use of the administrative proceeding was a factor considered under part two of the four-part test—the reason for the delay. *$8,850* at 566, 103 S.Ct. at 2013 ("An important justification for delaying the initiation of forfeiture proceedings is to see whether the Secretary's decision on the petition for remission will obviate the need for judicial proceedings.").

requirement of "prompt" action is of constitutional due process dimension); *In re 1975 Chevrolet Corvette, Two–Door Auto,* 424 So.2d 152, 153 (Fla.App.1982) (due process requires reasonably prompt forfeiture action); *Reach v. State,* 530 So.2d 40, 41 (Ala. 1988) (mandate in statute that forfeiture proceedings be instituted promptly is necessary to statute's constitutionality).

▮▮▮ The legislative history reflects a specific intent to ensure due process rights were protected. The history of the 1989 modifications to § 19–03.1–36, codifying the specific procedures government officials have to institute promptly in a forfeiture action, reflect this intent. Minutes of Senate Judiciary Committee on Senate Bill 2176, Summary of Testimony of Robert Bennett, January 11, 1989. An amendment to a statute must be considered in determining the true intent and objective of the legislature. *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Cas. Co.,* 452 N.W.2d 319, 322 (N.D.1990); *Hammond v. North Dakota State Personnel Board,* 332 N.W.2d 244, 247 (N.D.1983); *State v. Mees,* 272 N.W.2d 61, 65 (N.D.1978). Procedural due process requires notice and a meaningful opportunity for a hearing appropriate to the nature of the case. *Sabinash v. Director of Department of Transportation,* 509 N.W.2d 61, 63 (N.D.1993). The amendments provided notice and hearing requirements for parties with a legal interest in the property. The statute, taken as a whole, now provides an opportunity to be heard "at a meaningful time *and* in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976) (emphasis added); *see also $8,850,* 461 U.S. at 564, 103 S.Ct. at 2012, 76 L.Ed.2d at 152 (setting forth the framework for determining whether delay violated due process right to be heard at a meaningful time). We conclude the promptness requirement of the forfeiture statute should be interpreted consistent with the requirements of due process. *See Paluck,* 307 N.W.2d at 856.

▮▮▮ As a general rule, due process requires persons be given notice and an opportunity to be heard *before* the government deprives them of property. *Beckler v. N.D.*

*Workers Comp. Bur.,* 418 N.W.2d 770, 773 (N.D.1988); *United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 501, 126 L.Ed.2d 490, 501–03 (1994); *$8,850,* 461 U.S. at 562 n. 12, 103 S.Ct. at 2011 n. 12. There are exceptions to the general rule, "but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Good Real Property,* —— U.S. at ——, 114 S.Ct. at 501 (citations omitted) (government's seizure of real property was not an extraordinary situation justifying the postponement of notice and hearing until after the seizure). *But see $8,850,* 461 U.S. at 562, 103 S.Ct. at 2010–11 (seizure of currency subject to forfeiture is an extraordinary situation allowing for seizure without prior notice or hearing); *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (seizure of a yacht subject to civil forfeiture was extraordinary situation justifying seizure without prior notice or hearing).

O'Rourke does not argue, and therefore, we do not decide, whether extraordinary circumstances exist in this case justifying the seizure of the car without pre-seizure process. We need only decide whether the time lapse between seizure of the car and initiation of process by the State violated the statute and due process.

▮▮▮ In cases where the State does not provide pre-seizure notice and hearing, due process requires the State not "unduly delay" the bringing of post-seizure proceedings. *See $8,850* 461 U.S. at 564, 103 S.Ct. at 2012. There is no bright line dictating when a post-seizure hearing must occur. *$8,850,* 461 U.S. at 562, 103 S.Ct. at 2010–11. " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *$8,850,* 461 U.S. at 564, 103 S.Ct. at 2012 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). *See Beckler,* 418 N.W.2d at 773. Due process claims must be analyzed on an *ad hoc* basis by balancing the competing interests and assessing whether the basic due process requirement of fairness has been satisfied in a particular case. *$8,850,* 461 U.S. at 564–65, 103 S.Ct. at 2012–

13; *see State v. Padgett,* 410 N.W.2d 143, 145 (N.D.1987) (the resolution of a due process claim based on preaccusatorial delay requires a balancing of the reasonableness of the delay against the prejudice to the accused).

We hold the *Barker* test an appropriate standard to evaluate if the State has fulfilled the statutory requirement of prompt action in forfeiture cases under N.D.C.C. § 19–03.1–36(3). *See Moses v. Burleigh County,* 438 N.W.2d 186, 190 (N.D.1989) (this Court may be guided by federal court decisions in parallel federal civil rights litigation). Under the *Barker* test, none of the factors of the test are determinative. All relevant facts must be considered, whether they fit within one of the four parts of the *Barker* test or not. *See Presbuch; Wunderlich. See also Moynes v. State,* 555 So.2d 1086, 1088 (Ala. Civ.App.1989) (prompt means within reasonable time under the circumstances); *In re 1975 Chevrolet Corvette,* 424 So.2d at 153 (whether delay violated mandate of promptness is determined on a case-by-case basis).

**B**

Based on the affidavits filed before the trial court, the State argues the statutory requirement of prompt action has been met in this case, or at the very least, a fact issue exists precluding summary judgment on the issue of promptness.

The first factor of the *Barker* test is the length of the delay. The United States Supreme Court says it is the "overarching factor" in the analysis and it "is to some extent a triggering mechanism." *$8,850,* 461 U.S. at 565, 103 S.Ct. at 2012. The 174–day delay in this case between seizure of the Cadillac and initiation of proceedings is a significant lapse of time, weighing heavily against a finding of promptness.

Second, under the *Barker* analysis, is the reason for the delay. Normally, the question of whether the State has fulfilled its duty to act promptly is a question of fact. *Goldman,* 496 N.E.2d at 427; *In re 1975 Chevrolet Corvette,* 424 So.2d at 153. A party resisting a motion for summary judgment, however, has the responsibility of presenting competent admissible evidence by affidavit or

other comparable means, raising a material fact issue or from which the court may draw an inference creating a material factual issue. *Stewart v. Ryan,* 520 N.W.2d 39, 40 (N.D. 1994). In response to O'Rourke's motion, the State submitted three affidavits. Of them, only the affidavit of Mike Lynk, a special agent with the North Dakota Bureau of Criminal Investigation, however, relates to post-seizure actions. Lynk states he had

"participated in negotiations with Herbert O'Rourke which involved O'Rourke's purchase of controlled substances as part of a continuing criminal investigation.

"[T]he last contact with Herbert O'Rourke was on or about August or September 1993. At that time we again discussed O'Rourke's willingness to cooperate with law enforcement and he refused."

In a response affidavit, O'Rourke states he had negotiated with the State about providing assistance in the State's criminal investigation. O'Rourke also states:

"[H]owever, Mr. Lynk made it absolutely clear that under no conditions would he consider returning the Cadillac, and that no matter what I did Mr. Lynk intended to proceed with the forfeiture proceedings against the Cadillac. During the time that I worked with the drug enforcement unit, there was no further mention of me getting the Cadillac as the drug enforcement unit had made it quite clear that forfeiture was not negotiable, and that the drug enforcement unit intended to proceed with the forfeiture no matter what."

The State filed no additional affidavits.

Construing the evidence presented in favor of the State, as we must, we conclude there is no genuine dispute as to any material fact. The State's affidavits do not explain why the delay was a necessary component of the negotiations, or if the negotiations were the reason for the delay in instituting the proceedings. No competent admissible evidence was introduced by the State explaining its delay. Counsel for the State argues the delay was necessary to protect the confidential nature of O'Rourke's involvement in the criminal investigation. Nothing in the record, however, supports this

factual assertion. Arguments of counsel, absent affidavit or other sworn testimony, do not create an issue of fact. *Security State Bank v. Schultz,* 350 N.W.2d 40, 42–43 n. 2 (N.D.1984). Therefore, no factual dispute exists on this issue.

The next *Barker* factor is the conduct of the property owner in pursuing prompt action. The trial court found O'Rourke did not engage in any activity creating an estoppel or waiver. O'Rourke emphasizes the seized property is not subject to replevin, and is subject only to the district court having jurisdiction. *See* N.D.C.C. § 19–03.1–36(4). Preclusion of replevin, however, is neither novel nor unique. "It is a well-settled doctrine of the common law that replevin will not lie for goods in the custody of the law. . . ." *Shaide v. Brynjelfson,* 78 N.D. 531, 539, 50 N.W.2d 500, 504 (1951). And "claim and delivery will not lie to recover possession of property seized by a game warden pursuant to an act of the legislature." *Shaide,* 78 N.D. at 540, 50 N.W.2d at 505.

▮▮▮▮ O'Rourke incorrectly suggests nothing can be done if a law enforcement agency fails to begin a forfeiture proceeding as it should. "In *Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 790, 59 N.W.2d 849, 866 (1953), we specifically recognized that public officers could be compelled to comply with the law 'through *mandamus,* or mandatory injunction buttressed by contempt proceedings.' " *Ennis v. Dasovick,* 506 N.W.2d 386, 392 (N.D.1993). O'Rourke could have sought mandamus to compel the officials to begin forfeiture proceedings. O'Rourke did not affirmatively assert his right to a prompt hearing. Under the statute, however, the State is under an affirmative duty to act promptly. A property owner should not be required to take legal action to regain property the State has summarily taken. A property owner's actions are only relevant in cases where the property owner acts to vindicate the right to prompt action or consents to delay. *See Reach,* 530 So.2d at 41 (claimant under no duty to request release of property). O'Rourke swears he did not consent to the delay. The State presented no conflicting evidence. There is no dispute of fact. O'Rourke cannot be held to have consented to the delay.

▮▮▮▮ At oral argument, counsel for O'Rourke conceded the State's delay did not prejudice O'Rourke's ability to present a defense in the forfeiture proceeding. The issue of prejudice, however, is not confined to whether the claimant can adequately present a defense. Due process not only guarantees fair play, " '[i]ts purpose, more particularly, is to protect [a person's] use and possession of property from arbitrary encroachment—to minimize substantively unfair or mistaken deprivations of property.' " *James Daniel Good Real Property,* —— U.S. at ——, 114 S.Ct. at 501 (*quoting Fuentes v. Shevin,* 407 U.S. 67, 80–81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972)). The State's seizure of the Cadillac deprived O'Rourke of his right of ownership over the car, including his right of use and enjoyment, and the right of sale. Further, O'Rourke is prejudiced because the Cadillac is a wasting asset, which diminishes in value over time. *One (1) Ford Van, Econoline,* 381 A.2d at 393; *In re Forfeiture of One 1983 Cadillac,* 176 Mich.App. 277, 439 N.W.2d 346, 349 (1989).

▮▮▮▮ Finally, O'Rourke's due process rights were further prejudiced by the fact the Cadillac was seized without *any* prior process, increasing the risk that the State's seizure was an arbitrary encroachment on O'Rourke's right to property. Although not equivalent to a full hearing, pre-seizure, ex parte process in the form of a warrant issued by a detached magistrate, helps ensure the probable validity of the State's claim. " '[D]ue process is afforded only by the kinds of "notice" and "hearing" that are aimed at establishing the validity, or at least the *probable* validity, of the underlying claim. . . .' " *Garrison Memorial Hosp. v. Rayer,* 453 N.W.2d 787, 790 (N.D.1990) (emphasis added) (*quoting Sniadach v. Family Finance Corp.,* 395 U.S. 337, 343, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring)). *See also James Daniel Good Real Property,* —— U.S. at ——, 114 S.Ct. at 513 (O'Connor, J., concurring in part and dissenting in part).

In applying the *Barker* test, there is no evidentiary dispute as to a material fact.

Summary judgment was proper; the forfeiture action was not prompt as a matter of law.

## V

The judgment of the trial court is affirmed.

VANDE WALLE, C.J., and NEUMANN, J., concur.

MESCHKE, Justice, concurring.

I join in affirming dismissal of this forfeiture action because it was not "instituted promptly." Since my reasons differ from those given by the majority opinion, I write separately to explain. In my opinion, the reasons for delay of the trial for a crime are not comparable to the reasons for beginning a forfeiture action, the *Barker v. Wingo* analogy is not germane, and the majority's analysis overlooks more important considerations.

Constitutional considerations often play some part in interpreting a statute. "In enacting a statute, it is presumed that: Compliance with the constitutions of the state and of the United States is intended." NDCC 1–02–38(1). But different constitutional factors than those affecting delay in a criminal trial bear upon the need to promptly begin a forfeiture action against property seized without a warrant. Therefore, I disagree that the Legislature either instructed or intended that any delay in beginning a forfeiture action should be measured in the same way as delay of the trial of a criminal case.

The majority says: "The legislative history reflects a specific intent to ensure due process rights were protected," referencing a summary of testimony by Robert Bennett before the Senate Judiciary Committee on January 11, 1989. This statement accompanied later legislation than the relevant subsection, in NDCC 19–03.1–36(3) enacted in 1971, that directed prompt commencement of the forfeiture action against seized property. The 1989 amendments dealt with *how* a forfeiture action must be conducted, not with the 1971 direction about *when* the forfeiture action must be begun.

The 1971 enactment directed:

3. In the event of seizure pursuant to subsection 2 of this section, proceedings under subsection 4 of this section shall be instituted promptly.

1971 N.D.Laws ch. 235, § 36. Since then, the only change in this direction was stylistic from "shall" to "must." NDCC 19–03.1–36(3). North Dakota's 1989 enactment was codified in NDCC 19–03.1–36.1 through 19–03.1–36.7, not in NDCC 19–03.1–36(3), previously enacted.

The legislative history indicates that the original source of the "instituted promptly" phrase is the Uniform Controlled Substance Act, approved by the National Conference of Commissioners on Uniform Laws in 1970. *See* 9 U.L.A. 6 (1988) ("While the North Dakota act is a substantial adoption of the major provisions of the Uniform Act, it departs from the official text in such manner that the various instances of substitution, omission, and additional matter cannot be clearly indicated by statutory notes."). Still, the Uniform Act directed in § 505(c) that forfeiture "proceedings . . . shall be instituted promptly."

Moreover, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), did not decide when a criminal action must be begun, but rather decided when a criminal case must be tried sometime *after* it has been begun. A criminal case begins with the filing of a complaint, arrest, and initial court appearances well before trial. *See* NDRCrimP 3, 4, 5, and 5.1. *Compare* NDRCivP 3 ("A civil action is commenced by the service of a summons."). Justice Powell explained speedy trial considerations for a unanimous court in *Barker v. Wingo*:

But such a result [adoption of a rule requiring trial within six months of arrest, as recommended by the American Bar Association and established in the Second Circuit] would require this Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which we should confine our efforts. We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. The States, of course, are free

to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise.

407 U.S. at 523, 92 S.Ct. at 2188. The time to hold a criminal trial is not fairly comparable with the time to begin a forfeiture action.

To explain further, the U.S. Supreme Court measured the constitutional right to a speedy trial by "a balancing test, in which the conduct of both the prosecution and the defendant are weighed," using "some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right," including: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. at 2192. The U.S. Supreme Court carefully noted:

Nothing we have said should be interpreted as disapproving a presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought [to trial].

*Barker* at 530, n. 29, 92 S.Ct. at 2192, n. 29. To summarize, speedy trial factors have nothing to do with *beginning* a property forfeiture action after a warrantless seizure, any more than they have to do with *beginning* a criminal case after an arrest without a warrant.

The majority opinion observes that the "United States Supreme Court later adapted the four-part analysis to forfeiture cases, concluding the *Barker* test was also appropriate for determining whether the delay between a seizure of property and a forfeiture hearing violated due process," citing *United States v. $8,850*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). While accurate so far as it goes, this description of *$8,850* is incomplete and misleading for comparison here.

In *$8,850*, the question decided was whether due process permitted the Government's 18-month delay in filing a civil proceeding in district court for forfeiture of cash seized from a claimant when she failed to report it under the Bank Secrecy Act of 1970 before passing through customs at the Los Angeles International Airport. *Id.* at 556, 103 S.Ct. at 2007–08. The Court explained at the outset that the court procedure followed an immediately available agency procedure. *Id.* at 557, 103 S.Ct. at 2008. Thus, an owner of seized property had a remedy available during any delay before the forfeiture action was filed in court:

[T]he Customs Service generally follows the procedures governing forfeitures for violations of the customs laws, as set forth in 19 U.S.C. § 1602 *et seq.* (1976 ed. and Supp. V), and the implementing regulations. Under these procedures, the Customs Service notifies any person who appears to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of the forfeiture. See 19 CFR § 162.31(a) (1982). The regulations require a claimant to file the petition within 60 days. 19 CFR § 171.12(b) (1982).

If the claimant does not file a petition, or if the decision on a petition makes legal proceedings appear necessary, the appropriate customs officer must prepare a full report of the seizure for the United States Attorney. 19 U.S.C. § 1603 (1976 ed., Supp. V). Upon receipt of a report, the United States Attorney is required "immediately to inquire into the facts" and, if it appears probable that a forfeiture has been incurred, "forthwith to cause the proper proceedings to be commenced and prosecuted, without delay." 19 U.S.C. § 1604 (1976 ed., Supp. V). After a case is reported to the United States Attorney for institution of legal proceedings, no administrative action may be taken on any petition for remission or mitigation. 19 CFR § 171.-2(a) (1982).

*$8,850*, 461 U.S. at 557–58, 103 S.Ct. at 2008–09 (footnotes omitted). The Court later emphasized that the Customs Service is required "to warn claimants that unless they agree to defer judicial forfeiture proceedings until completion of the administrative process, the case will be referred *promptly* to the United States Attorney for institution of judicial proceedings, or summary forfeiture proceedings will be begun." *Id.* at 566, n. 16, 103 S.Ct. at 2013, n. 16 (emphasis added).

This delay in beginning a federal forfeiture procedure in the court system is more like delaying trial since an immediate agency remedy is available to a claimant after a federal seizure.

> The Customs Service processes over 50,-000 noncontraband forfeitures per year. U.S. Customs Service, Customs U.S.A. 36 (1982). In 90% of all seizures, the claimant files an administrative petition for remission or mitigation. Brief for United States 7. The Secretary in turn grants at least partial relief for an estimated 75% of the petitions. *Ibid.* Typically, this relief terminates the dispute without the filing of a forfeiture action in district court.

*$8,850* at 558, 103 S.Ct. at 2009. There is no wonder why the Supreme Court measured the delay before beginning a federal forfeiture action in a customs case like the delay before holding a criminal trial.

Federal drug forfeitures also follow the federal customs procedure. The relevant federal law under the Comprehensive Drug Abuse Prevention and Control Act of 1970, codified at 21 U.S.C. 801 et seq., contains a subsection making "other laws and proceedings applicable."

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws; the disposition of such property or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter....

21 U.S.C. 881(d) (1988). Procedurally, federal forfeitures for drug related crimes are identical to those for violations of customs laws in that an interim agency procedure is immediately available.

The federal set-up is much different than our state forfeiture procedure where there is no interim agency procedure available. A claimant has no ready remedy for an erroneous state seizure until the forfeiture proceeding is begun in court. Rather:

> Property taken or detained under this section is *not subject to replevin,* but is

deemed to be in custody of the board or a law enforcement agency *subject only to the orders and decrees of the district court having jurisdiction over the forfeiture proceedings* as set out in subsection 2.

NDCC 19–03.1–36(4) (part only) (emphasis added). *Compare* NDRCrimP 41(b), (e), and (h) (Criminal rules for return of property seized as evidence do "not modify any act, inconsistent with it...."); NDRCrimP 54(b)(4) ("These rules do not apply to: ... (ii) Forfeiture of property for violation of a statute of this state;"). For North Dakota's exclusive forfeiture procedure, the factors for measuring delay of a criminal trial do not appropriately measure the promptness required for beginning the forfeiture action after a warrantless seizure.

No judicial warrant for this seizure of one black 1989 Cadillac was obtained by law enforcement officers, but the seizure was premised upon probable cause. Absent an extraordinary situation, the power of the state to seize a person's property must be ordinarily justified by a judicial determination of probable cause. *Boddie v. Connecticut,* 401 U.S. 371, 378–79, 91 S.Ct. 780, 791–92, 28 L.Ed.2d 113 (1971); *U.S. v. $8,850,* 461 U.S. at 562, n. 12, 103 S.Ct. at 2010–11, n. 12. *Compare State ex rel. Herigstad v. McCray,* 48 N.D. 625, 186 N.W. 280 (1921) (due process requires government to give notice and hearing opportunity before seizing real property); *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (same); *United States v. James Daniel Good Real Property,* — U.S. ——, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (same). However, an extraordinary situation sometimes exists that can temporarily defer a judicial determination of probable cause, when the government seizes movable and forfeitable property. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (due process did not require Puerto Rican officials to conduct a hearing before seizing a boat for forfeiture when there is probable cause to believe that it was used for drugs). In this case, we consider how long state officials may delay before beginning any formal procedure for judicial attention

after the *ex parte* seizure of property used in drug-law violations.

The seizure of movable property for forfeiture without probable cause violates the constitutional guarantee of the right of the people to be secure "in their persons, houses, papers and effects, against unreasonable searches and seizures," and the seized property is subject to the exclusionary rule of evidence and, unless it is contraband per se, it must be returned to the owner. *One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *Soldal v. Cook County, Ill.,* —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). For the like warrantless seizure and arrest of a person, the same constitutional guarantee in the Fourth Amendment requires that a judicial determination of probable cause be made promptly as a prerequisite to pretrial detention of the person. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In this context, *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), recently decided how promptly that probable cause determination must be made for a warrantless seizure of a person. Logically, similar promptness should be necessary for judicial attention to a warrantless seizure of property.

Considering it "important to provide some degree of certainty so that States and counties may establish procedures with confidence that they fall within constitutional bounds," Justice O'Connor wrote for the majority in *County of Riverside* that, "[w]here an arrested individual does not receive a probable cause determination within 48 hours, ... the arrested individual does not bear the burden of proving an unreasonable delay." *Id.* at 56, 57, 111 S.Ct. at 1670. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasi-

ble, but in no event later than 48 hours after arrest. *Id.* The four dissenting justices believed that "a probable-cause hearing is sufficiently 'prompt' under *Gerstein* only when provided immediately upon completion of the 'administrative steps incident to arrest.'" *Id.* at 59, 111 S.Ct. at 1671. The short time necessary for judicial attention to a warrantless seizure of a person is more closely related—if it is not exactly the same—to the time essential for judicial attention to a warrantless seizure of movable property.

The constitutional concerns in this case are not due process or speedy trial as in *Barker* and *$8,850.* Rather, the important constitutional concern here is a Fourth Amendment one: When must judicial attention begin to make a warrantless seizure of movable property reasonable.

"The practice of *ex parte* seizure [of property], moreover, creates an unacceptable risk of error." *James Daniel Good Real Property,* —— U.S. at ——, 114 S.Ct. at 501. Other courts have explained how this risk requires a punctual procedure for judicial attention to a warrantless seizure of property:

> [T]he lack of preseizure notice and hearing serves to emphasize the importance of the forfeiture hearing which this state's legislature has seen fit to provide....
>
> ....
>
> Because of the provision for seizure during the period prior to the hearing, the owner is deprived of the use of his vehicle regardless of whether it is actually subject to forfeiture or has been seized in compliance with statutory requirements.
>
> ....
>
> Here, there is no specific penalty provided for failure to adhere to the time provision. However, the statute seeks to provide a prompt adjudication of the issues involved in the forfeiture proceeding, and seeks to mitigate the harsh effects of the seizure and forfeiture proceeding. A directory construction would allow the state to continue to hold the property which has been seized for an indefinite period of time, without having to prove its compliance with the provisions of [statute], or that the

property is actually subject to forfeiture. The interest of the state and the public in controlling the drug traffic, which the forfeiture action is designed to protect, is adequately served by the initial seizure. The interests of the possibly innocent owner should likewise be protected by strict compliance with the procedural mandate of [law].... Although the action is designated as a proceeding in rem, ... it cannot be denied that it imposes a penalty, and, as such, must be subject to strict application of procedural guarantees,.... A time provision should be construed as directory only if an injury or wrong could not be presumed to result,....

*State v. Rosen,* 72 Wis.2d 200, 240 N.W.2d 168, 171–72 (1976) (citations omitted). And:

[B]ecause such seizures are ex parte, the statutory safeguards should be rigidly adhered to.

....

[I]n forfeiture actions safeguards which are statutorily provided should be strictly construed. Therefore, ... time limitations provided by statute must be considered mandatory.

*State v. 1978 LTD II,* 216 Mont. 401, 701 P.2d 1365, 1367 (1985), citing *State v. Rosen.* Even though these cases construe different forfeiture statutes, the factors that they emphasize are equally important here. In *State v. Ronngren,* 356 N.W.2d 903, 905 (N.D.1984) (citations omitted), this court expressed like views: "Forfeitures are not favored. Contract law provides that: 'A condition involving a forfeiture must be interpreted strictly against the party for whose benefit it is created.' Section 9–01–15, NDCC. Many courts have applied similar standards to statutes which impose forfeiture."

Ordinarily, "promptly" means "at once; immediately; quickly." Webster's Third New International Dictionary 1816 (1971). Our rules of statutory interpretation direct that "[w]ords used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears,...." NDCC 1–02–02. We should give the phrase, "instituted promptly," its ordinary meaning—to begin immediately, quickly, and without delay.

That meaning is the one that the trial court used in deciding this case:

The initial question ... is whether a delay of 174 days in instituting forfeiture proceedings can, nevertheless, be considered "prompt."

There was no reason why forfeiture proceedings could not have been commenced immediately after the seizure of the Cadillac occurred....

Recognizing that the word "prompt" carries with it no fixed meaning, the commencement of the forfeiture proceeding was certainly not "prompt" in this case since there was no reason to delay. The question then becomes whether a failure to act promptly can be excused and, if so, whether the circumstances in this case constitute such an excuse.

... I note also the statute in question says that the forfeiture proceeding "must be" instituted promptly.

While I do not suggest that it should be heightened to the same level of scrutiny as an ex parte loss of liberty, which occurs with a warrantless arrest, an ex parte loss of property on a warrantless seizure carries with it the same policy consideration, which is that an ex parte seizure of private property by the government is of sufficient concern so as to require an immediate independent probable cause determination or, to use the language of our statute, a "prompt" probable cause determination. See 19–03.1–36.6 NDCC.

The language under consideration here is identical to the language in the Uniform Controlled Substance Act. In reviewing case law in this area, the first thing to be noted is that the statutory enactments vary from place to place, including the federal enactment, and court decisions must be read with those distinctions in mind. For example, some statutes contain specific time limits.

Some of the cases are couched in terms of whether the delay was "reasonable." Our statute contains no provision of that nature. Furthermore, it does not say that the proceeding should be commenced with-

in a reasonable time, but states that the proceeding must be commenced promptly.

. . . .

The owner did nothing that would justify the conclusion that he had waived the benefits of the statute or was estopped from insisting that the government comply therewith. On the contrary, the government had his car in its possession and its absence created an awkward situation for its owner. Delaying commencement of the forfeiture proceeding, which is essentially a private process between the government and the owner of the vehicle, did not provide the owner with any protection or make him any less effective at all, because the government still had the vehicle in its possession. Letting him *keep* the car would have better served the government's avowed purpose.

As stated, the question to be resolved is not whether delay was "reasonable" or "justifiable," but whether the government complied with the statutory command that it institute proceedings promptly. There was nothing to prevent it from doing so, and the delay of 174 days was not prompt. The owner did not engage in any activity that could be said to create an estoppel or waiver against him. His motion is therefore granted.

For the reasons I have given, I agree with the trial court's reasoning.

The phrase, "must be instituted promptly," when used in other state's forfeiture statutes, has been interpreted similarly. *Reach v. State*, 530 So.2d 40, 41 (Ala.1988) (citations omitted) ("The mandate in the statute that forfeiture proceedings be instituted *promptly* is necessary to the statute's constitutionality. The statute contains no provision whereby the owner of a seized vehicle may post a bond and secure the use of his vehicle pending a hearing on the merits concerning the seizure."); *City of Everett v. Slade*, 83 Wash.2d 80, 515 P.2d 1295, 1298–99 (1973) ("A delay of almost two full months does not constitute prompt action. . . ."). *See also* Annot., *Timeliness of Institution of Proceedings For Forfeiture Under Uniform Controlled Substances Act or Similar Statute*, 90 ALR 4th 493, 517, § 14(b) ("Promptly" or

"shall ... promptly;" "Proceeding untimely"). In this case, the State's commencement of forfeiture proceedings 174 days after it seized this Cadillac without a warrant was not prompt.

I agree that the trial court properly dismissed this forfeiture action and correctly ordered return of the Cadillac to the claimant.

LEVINE, J., concur.