# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 30

### OCTOBER TERM, A.D. 2019

*March 3, 2020*

IN THE MATTER OF U.S. CURRENCY
TOTALING $470,040.00:

ROBERT MILLER,

Appellant
(Claimant),

v.

S-19-0143

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*

Bradley L. Booke, Jackson, Wyoming; David M. Michael, Law Offices of Michael and Burch, LLP, San Francisco, California. Argument by Mr. Michael.

*Representing Appellee:*

Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Catherine Mercer, Assistant Attorney General. Argument by Ms. Mercer.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]	The State of Wyoming seized $470,040 in United States currency from Robert Miller in November 2013. The district court forfeited the currency to the State under the Wyoming Controlled Substances Act, Wyo. Stat. Ann. §§ 35-7-1001 to -1060.[1] The dispositive issue is whether the State's 270-day (nine-month) delay in instituting civil forfeiture proceedings violated the statutory requirement that the State institute such proceedings "promptly" and Mr. Miller's right to due process under the United States Constitution. Applying the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to assess Mr. Miller's statutory and constitutional rights, we conclude the State unreasonably delayed filing the action. We therefore reverse and remand for dismissal with prejudice.

## *ISSUE*

[¶2]	Mr. Miller raises eight issues on appeal, the first of which is dispositive and which we restate as follows:

> Should this action have been dismissed because it was not instituted "promptly" as required by W.S. § 35-7-1049(c) and the Due Process Clause of the United States Constitution?[2]

## *FACTS*

### *The Seizure*

[¶3]	The facts underlying the seizure, though not directly at issue, provide important context for the proceedings. On the evening of November 18, 2013, Wyoming Highway

---

[1] Because the State seized the currency from Mr. Miller in 2013, this appeal concerns the 2013 version of § 35-7-1049. In 2016, the legislature made sweeping changes to the statute, including many of the provisions central to this appeal. 2016 Wyo. Sess. Laws, ch. 1, § 2 (specifying the amendments apply "to seizures of property which occur on or after July 1, 2016 and to any forfeiture[] proceedings related to property seized on or after July 1, 2016"). For example, in 2013, the statute required the State to institute forfeiture proceedings "promptly." Wyo. Stat. Ann. § 35-7-1049(c) (LexisNexis 2013). Now the statute requires the State to bring a forfeiture action "within one hundred twenty (120) days from the date of seizure or within thirty (30) days following the completion of any criminal prosecution relating to the seizure, whichever is later." 2016 Wyo. Sess. Laws, ch. 1, § 1; Wyo. Stat. Ann. § 35-7-1049(d) (LexisNexis 2019).

[2] Mr. Miller mentioned the Wyoming Constitution in several pleadings, but he did not advance a due process argument under the state constitution in the district court. He references the Wyoming Constitution only in passing on appeal. "It is usually essential to raise state constitutional claims in the lower court to warrant our review on appeal." *Sheesley v. State*, 2019 WY 32, ¶ 16 n.6, 437 P.3d 830, 838 n.6 (Wyo. 2019) (citation omitted). Even setting that issue aside, Mr. Miller "has not provided 'well founded legal reasons' justifying resort to independent state grounds[.]" *Id.* ¶ 16, 437 P.3d at 838. We therefore review his due process claim solely under the United States Constitution.

1

Patrol Trooper Brandon Dyson stopped Mr. Miller for speeding on Interstate 80 in Uinta County, Wyoming. Mr. Miller, the sole occupant of the car, told Trooper Dyson that the car was a rental and he was traveling from Reno, Nevada to his home in Illinois. Mr. Miller provided Trooper Dyson his Illinois driver's license and rental car agreement. The agreement reflected the car had been rented two days earlier in Fresno, California. Trooper Dyson invited Mr. Miller to sit in the passenger seat of his patrol car while Trooper Dyson wrote him a citation.

[¶4] While Trooper Dyson completed the citation, they chatted about Mr. Miller's reason for visiting Fresno and his travel itinerary. Trooper Dyson noticed what he considered signs of nervousness and deception. Trooper Dyson asked for and received permission from Mr. Miller to ask some additional questions after completing the traffic stop. Mr. Miller denied having anything illegal in the car and gave Trooper Dyson permission to search it. When Trooper Dyson pulled back the carpet lining along the right side of the trunk, he discovered a manila envelope in the void behind the trunk lining. The envelope contained rubber-banded bundles of currency. He saw at least one more manila envelope in the void behind the lining. He returned to his patrol car and read Mr. Miller his *Miranda* rights. Mr. Miller stated he wanted to talk to a lawyer.

[¶5] Trooper Dyson searched the car further and found nine manila envelopes containing a total of $470,000 in the rear quarter panels. Mr. Miller also had $40 in his possession. Trooper Dyson learned from the El Paso Intelligence Center and an officer in California that Mr. Miller had ties to a case involving large quantities of LSD and LSD precursor in California.[3] A Wyoming Division of Criminal Investigation task force officer contacted the Wyoming Attorney General's Office later that night and received authorization to seize the currency under Wyoming's civil forfeiture statute.

### The State's Complaint and Mr. Miller's Answer

[¶6] The State filed its *Verified Complaint for Forfeiture In Rem* 270 days after the seizure, on August 15, 2014. The complaint alleged the currency had been lawfully seized pursuant to a probable cause determination by the Wyoming Attorney General, and therefore complied with Wyo. Stat. Ann. § 35-7-1049(b)(iii). The complaint further alleged the currency was subject to forfeiture because it "was used, or intended for use, in the delivery or receipt of controlled substances, or was otherwise used to facilitate a violation of the Wyoming Controlled Substances Act."

[¶7] Mr. Miller answered the complaint, generally denying that the currency was subject to forfeiture. Among fifteen affirmative defenses, he asserted he had "an innocent possessory and/or ownership interest" in the currency because it "derived from legitimate activities," the complaint was barred by the applicable statute of limitations, and the State

---

[3] Further investigation "revealed that the connection was eight to nine years old."

had "violated its statutory and federal and state constitutional obligations to initiate th[e] action promptly."

## *Mr. Miller's Motion to Dismiss*

[¶8] Mr. Miller moved to dismiss the case a couple of months later on grounds that the State's delay in instituting proceedings violated his due process rights under the United States Constitution. He asked the court to evaluate whether his right to due process had been violated using the four-factor *Barker* test, as set forth in *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). He argued the *Barker* factors weighed against the State, citing the North Dakota Supreme Court's decision in *State v. One Black 1989 Cadillac VIN 1G6DW51Y8KR722027*, 522 N.W.2d 457 (N.D. 1994), in support of his position.

[¶9] Mr. Miller attached two exhibits to his motion. First, he attached an affidavit from one of his attorneys summarizing a January 27, 2014, telephone conversation with the State's attorney. The affidavit reflected that during the conversation, defense counsel "emphasized his concerns about due process with regard to the Wyoming forfeiture statutes" and expressed "his serious concern about delay in instituting a forfeiture action." The State's attorney advised defense counsel "of her belief that the Wyoming statutory regime allowed one year after seizure within which to file a forfeiture petition[.]"

[¶10] Second, he attached a copy of two emails between the State's attorney and his counsel regarding a June 27, 2014, telephone conversation. In the first email, dated June 27, the State's attorney referenced their conversation earlier that afternoon and reiterated that she intended to file a complaint for forfeiture of the $470,040. Then she extended a settlement offer to Mr. Miller. The State was "willing to return 10% of the funds in exchange for [Mr. Miller's] voluntary relinquishment of his claim to the rest of the money." If there was any information Mr. Miller was "willing and able to provide that might demonstrate a legitimate source of the funds," the State would be willing to consider it in the course of any settlement negotiations. The State's attorney asked defense counsel to inform her of Mr. Miller's acceptance or rejection of the offer and whether Mr. Miller might be willing or able to provide additional information.

[¶11] In the second email, dated June 28, defense counsel responded less than enthusiastically to the settlement offer, stating he would "certainly discuss [it] with my client although it seems a bit premature to contemplate settlement at this time." He noted there were "a number of issues we will need to consider in that regards, including my own concerns with due process issues created by Wyoming law (or the absence of any law establishing procedural safeguards) and the probable cause burdens borne by the government in any forfeiture case." He informed the State's attorney that he would "get

3

back to [her] about the offer" and "look[ed] forward to receiving" the State's forfeiture complaint.

## *The State's Response*

[¶12] The State opposed Mr. Miller's motion to dismiss on grounds that he lacked standing to participate in the proceedings, the statute of limitations to file the forfeiture action was one year under Wyo. Stat. Ann. § 1-3-105(a)(v)(D), and its initiation of proceedings 270 days after the seizure did not violate Mr. Miller's due process rights because the *Barker* factors weighed in its favor. The State identified two reasons for the delay: state and federal criminal investigations and the settlement offer. The State attached an affidavit explaining these reasons in more detail.

[¶13] The affidavit first addressed the January 27, 2014 conversation. The State's attorney explained that defense counsel "inquired into the general circumstances of the seizure of the defendant currency and the status of law enforcement's pending investigation." She informed defense counsel "that law enforcement's efforts were ongoing, and that the Attorney General's Office would not initiate any forfeiture proceedings until any investigation(s) came to a close." She further informed defense counsel "that by statute, the State has one year to initiate forfeiture proceedings." Mr. Miller's counsel "disagreed with [her] decision to wait and allow law enforcement to conduct their investigation, stating he had concerns with whether it was proper to do so." But defense counsel "did not elaborate on these concerns," and she understood them to be advocacy.

[¶14] The affidavit next addressed the reason for the delay from January 27 to the middle of June 2014. After her conversation with defense counsel, she retrieved the forfeiture case file, which included the Division of Criminal Investigation's report. She reviewed the file and began evaluating whether to initiate forfeiture proceedings. She also began to periodically contact the Division of Criminal Investigation "to stay current with [its] investigation and to ascertain whether any criminal action would be pursued." Given the large amount of currency and information suggesting that Mr. Miller was tied to LSD distribution in California, the State's attorney also contacted United States Drug Enforcement Administration officials and learned they were also investigating Mr. Miller. By the middle of June, it appeared unlikely that either Wyoming or federal law enforcement would pursue criminal charges against Mr. Miller, so the State's attorney began preparing the forfeiture complaint and related documents.

[¶15] Finally, the affidavit addressed the delay associated with the June 2014 settlement offer. The State's attorney did not want to initiate proceedings only to "learn of a settlement requiring its dismissal," so she afforded counsel "approximately three to four weeks to get back in touch with [her]." When she did not hear back, she finalized the notice and complaint and initiated proceedings on August 15.

4

### Denial of the Motion and Subsequent Proceedings

[¶16] The court converted Mr. Miller's motion to dismiss to a motion for summary judgment and denied it because Mr. Miller "ha[d] not demonstrated the nonexistence of a material fact nor his entitlement to judgment as a matter of law on the claimed violation of his due process rights." Mr. Miller unsuccessfully moved for reconsideration. After several more rulings adverse to Mr. Miller, the district court held a bench trial and forfeited the currency to the State. This appeal followed.

## STANDARD OF REVIEW

[¶17] Mr. Miller's arguments regarding the forfeiture statute and due process relate to his motion to dismiss, which the district court automatically converted to a motion for summary judgment and denied. *Inman v. Boykin*, 2014 WY 94, ¶¶ 14–15, 330 P.3d 275, 280 (Wyo. 2014). While the denial of Mr. Miller's summary judgment motion is not appealable, *see*, *e.g.*, *Halvorson v. Sweetwater Cty. Sch. Dist. No. 1*, 2015 WY 18, ¶ 21, 342 P.3d 395, 402 (Wyo. 2015), the alleged errors relating to the denial of that motion constitute matters of law that merged into and were preserved for our review in the district court's final order forfeiting the currency to the State. *See Essex Holding, LLC v. Basic Properties, Inc.*, 2018 WY 111, ¶ 47, 427 P.3d 708, 722–23 (Wyo. 2018) (citing *State Farm Mut. Auto Ins. Co. v. Shrader*, 882 P.2d 813, 820 (Wyo. 1994) (citations omitted)). "We review issues of law," including constitutional issues, de novo. *Id.* ¶ 47, 427 P.3d at 723 (citing *Lurie v. Blackwell*, 2002 WY 110, ¶ 7, 51 P.3d 846, 848 (Wyo. 2002) (citations omitted) (where facts contained in the record are essentially undisputed, the appeal presents an issue of law, which is reviewed de novo)); *see also Kovach v. State*, 2013 WY 46, ¶ 19, 299 P.3d 97, 104 (Wyo. 2013) (citation omitted) (constitutional claims are reviewed de novo). "We undertake a full review of the record without giving deference to the trial court's views." *Essex*, ¶ 47, 427 P.3d at 723 (citing *Wyo. Med. Ctr., Inc. v. Murray*, 2001 WY 63, ¶ 7, 27 P.3d 266, 268 (Wyo. 2001)).

## DISCUSSION

[¶18] Civil asset forfeiture under Wyo. Stat. Ann. § 35-7-1049 "is appropriate only with respect to certain types of property which the legislature has deemed to be 'subject to forfeiture.'" *State v. Eleven Thousand Three Hundred Forty-Six Dollars & No Cents in U.S. Currency ($11,346)*, 777 P.2d 65, 67 (Wyo. 1989). The State sought to forfeit the $470,040 under subsection (a)(viii), which identified the following as subject to forfeiture: "[a]ny property . . . furnished in exchange for a controlled substance in violation of this act including any proceeds, assets or other property of any kind traceable to the exchange and any money, securities or other negotiable instruments used to facilitate a violation of this act." Wyo. Stat. Ann. § 35-7-1049(a)(viii).

[¶19] The legislature also "imposed certain procedural restrictions on the State's access to" forfeiture. *$11,346*, 777 P.2d at 67. Subsection (b) outlined the circumstances in which a state law enforcement officer may seize property with and without process:

> (b) Property subject to forfeiture under this act may be seized by any law enforcement officer of the state upon process issued by any district court or district court commissioner having jurisdiction over the property. Seizure without process may be made if:
>
> > (i) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
> >
> > (ii) The property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal, injunction or forfeiture proceeding based upon this act;
> >
> > (iii) The board or commissioner has probable cause to believe that the property was used or is intended to be used in violation of this act.

Wyo. Stat. Ann. § 35-7-1049(b). There is no dispute the State seized the currency from Mr. Miller without process under subsection (b)(iii).[4]

[¶20] Subsection (c) required the State to institute forfeiture proceedings "promptly," stating: "In the event of seizure pursuant to subsection (b) of this section, proceedings under subsection (d) of this section shall be instituted promptly." Wyo. Stat. Ann. § 35-7-l049(c); *see also $11,346*, 777 P.2d at 70 (Thomas, J., specially concurring and dissenting) (noting "[s]ubsection (c) of the statute [] requires the prompt institution of proceedings"). From the beginning, the State has incorrectly insisted Wyo. Stat. Ann. § 1-3-105(a)(v)(D) allowed the State one year from the date of the seizure to institute forfeiture proceedings. That statute of limitations applies to "[c]ivil actions other than for the recovery of real property" and states in relevant part:

> (a) Civil actions other than for the recovery of real property can only be brought within the following periods after the cause of action accrues:

---

[4] The forfeiture statutes refer to a determination by the "commissioner," who is defined as the Wyoming Attorney General. Wyo. Stat. Ann. §§ 35-7-1002(a)(xxvi) (defining the "commissioner" as "the commissioner of drugs and substances control"), 35-7-1003 (designating the Wyoming Attorney General the "commissioner of drugs and substances control").

. . . .

(v) Within one (1) year, an action for:

. . . .

(D) Upon a statute for a penalty or forfeiture, **except that if a different limitation is prescribed in the statute by which the remedy is given the action shall be brought within the period prescribed by the statute**.

Wyo. Stat. Ann. § 1-3-105(a)(v)(D) (LexisNexis 2019) (emphasis added). The one-year statute of limitations did not apply to Mr. Miller's case because the forfeiture statute "prescribed" a "different," albeit inexact, "limitation"—it required the State to institute forfeiture proceedings "promptly." Wyo. Stat. Ann. § 35-7-1049(c).

[¶21] We have recognized that "'[p]romptly' is not an exact term." *Elec. Wholesale Supply Co. Inc. v. Fraser*, 2015 WY 105, ¶¶ 25–26, 356 P.3d 254, 261 (Wyo. 2015) (interpreting Wyo. Stat. Ann. § 29-1-301(c)'s requirement that the lien claimant give the property owner notice "by certified mail . . . promptly after the lien statement is filed"). "The plain meaning of 'prompt' is 'at once,' 'without delay,' or 'quick to act as occasion demands.'" *Id.* ¶ 26, 356 P.3d. at 261 (quoting *Webster's Third New Int'l Dictionary* 1816 (2002)). "As the definition recognizes, what is 'prompt' depends upon the situation." *Id.*

[¶22] The State's assumption that the one-year statute of limitations applied to this situation could have rendered the promptness requirement in Wyo. Stat. Ann. § 35-7-1049(c) meaningless.[5] But that observation does not answer the question at hand—did the State initiate this forfeiture proceeding promptly or not? We conclude the State acted "promptly" only if it honored the procedural due process protections afforded by the United States Constitution.

---

[5] We will not interpret an unambiguous statute or construe an ambiguous statute in a way that renders any portion of the statute meaningless. *Sena v. State*, 2019 WY 111, ¶ 20, 451 P.3d 1143, 1148 (Wyo. 2019) (statutory interpretation); *Schmuck v. State*, 2017 WY 140, ¶ 57, 406 P.3d 286, 304 (Wyo. 2017) (statutory construction). If we deemed "promptly" to be ambiguous, the legislature's subsequent amendment to specify that a forfeiture proceeding must be initiated "within one hundred twenty (120) days from the date of seizure or within thirty (30) days following the completion of any criminal prosecution relating to the seizure, whichever is later," 2016 Wyo. Sess. Laws, ch. 1, § 1; Wyo. Stat. Ann. § 35-7-1049(d) (LexisNexis 2019), makes even clearer that the one-year statute of limitations does not control. "[W]here the legislature, by subsequent amendment or legislation in the same act or on the same subject, enacts language which clarifies previously ambiguous language, the subsequent language gives meaning to the previously ambiguous expression." *Bates v. Chicago Lumber Co. of Omaha*, 2016 WY 58, ¶ 28, 375 P.3d 732, 739 (Wyo. 2016) (quoting *Moncrief v. Wyoming State Bd. of Equalization*, 856 P.2d 440, 444–45 (Wyo. 1993)).

[¶23] A civil forfeiture proceeding is quasi-criminal. *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965). "Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *Id.* Accordingly, a civil forfeiture proceeding implicates a person's due process rights. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48–49, 53, 114 S.Ct. 492, 498, 126 L.Ed.2d 490 (1993); *$8850*, 461 U.S. at 562–64, 103 S.Ct. at 2011–12. "The pertinent provision of the Fifth and Fourteenth Amendments to the United States Constitution . . . essentially provide that no person shall be deprived of life, liberty or property without due process of law." *BP Am. Prod. Co. v. Dep't of Revenue, State of Wyo.*, 2005 WY 60, ¶ 27, 112 P.3d 596, 609 (Wyo. 2005) (quoting *Reiter v. State*, 2001 WY 116, ¶ 19, 36 P.3d 586, 592 (Wyo. 2001)). "Procedural due process is satisfied 'if a person is afforded adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" *Id.* (quoting *Robbins v. South Cheyenne Water and Sewage Dist.*, 792 P.2d 1380, 1385 (Wyo. 1990)). Such procedural protections are demanded "where a state seeks to terminate a . . . property interest[.]" *Robbins*, 792 P.2d at 1385 (citation omitted).

[¶24] The United States Supreme Court held in its seminal case, *$8,850*, that the four-factor test developed in *Barker* to evaluate a defendant's speedy trial right under the Sixth Amendment to the United States Constitution "provides the relevant framework for determining whether the delay in filing a forfeiture action was reasonable." 461 U.S. at 555–56, 103 S.Ct. at 2007. The factors are: (1) the length of the delay, (2) the reason for the delay, (3) the claimant's assertion of his right, and (4) the prejudice to the claimant. *Id.*, 461 U.S. at 564, 103 S.Ct. at 2012 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). "[N]one of these factors is a necessary or sufficient condition for finding unreasonable delay." *Id.*, 461 U.S. at 565, 103 S.Ct. at 2012. The factors "are guides in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *Id.* (footnote omitted). A court's objective in weighing the factors is to determine at what point a post-seizure delay "become[s] so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." *Id.*, 461 U.S. at 562–63, 103 S.Ct. at 2011; *see BP Am. Prod. Co.*, ¶ 27, 112 P.3d at 609. We evaluate those factors to determine whether the State instituted this forfeiture proceeding "promptly," in accordance with Mr. Miller's rights under both Wyo. Stat. Ann. § 35-7-1049(c) and the United States Constitution.

### A. Length of the Delay

[¶25] "[T]he overarching factor" in applying the *Barker* test "is the length of the delay." *$8,850*, 461 U.S. at 565, 103 S.Ct. at 2012. It "is to some extent a triggering mechanism." *Id.* (quoting *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192). "Little can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case." *Id.* "[S]hort delays—of perhaps a month or so—need less justification than longer delays." *Id.* In *$8,850*, the Court regarded an 18-month delay "as

8

quite significant," adding that "[b]eing deprived of this substantial sum of money for a year and a half is undoubtedly a significant burden." *Id.* Here, the 270-day delay between seizure of $470,040 from Mr. Miller without process on November 18, 2013, and initiation of proceedings on August 15, 2014, was a significant lapse of time, weighing heavily against the State.

### B. Reason for the Delay

[¶26] "Closely related to the length of the delay is the reason the Government assigns to justify the delay." *Id.* "The Government must be allowed some time to decide whether to institute forfeiture proceedings." *Id.* "Both the Government and the claimant have an interest in a rule that allows the Government some time to investigate the situation in order to determine whether the facts entitle the Government to forfeiture so that, if not, the Government may return the money without formal proceedings." *Id.*, 461 U.S. at 565, 92 S.Ct. at 2013. "Normally, investigating officials can make such a determination fairly quickly, so that this reason alone could only rarely justify a lengthy delay." *Id.*, 461 U.S. at 566, 92 S.Ct. at 2013.

[¶27] The State justified the delay from November 2013 to June 2014 based mainly on the pending criminal investigations, although the State's affidavit also reflects that it spent some unidentified amount of time deciding whether to institute forfeiture proceedings. In *$8,850,* the United States Supreme Court stated that pending criminal proceedings may be considered when determining whether delay is unreasonable. *Id.*, 461 U.S. at 567, 103 S.Ct. at 2013. "A prior or contemporaneous civil proceeding could substantially hamper the criminal proceeding[.]" *Id.* "A prior civil suit might serve to estop later criminal proceedings and may provide improper opportunities for the claimant to discover the details of a contemplated or pending criminal prosecution." *Id.* (citations omitted). "In some circumstances, a civil forfeiture proceeding would prejudice the claimant's ability to raise an inconsistent defense in a contemporaneous criminal proceeding." *Id.* (citation omitted). But the Court emphasized that a pending trial would "not automatically toll the time for instituting a forfeiture proceeding." *Id.*, 461 U.S. at 567, 103 S.Ct. at 2013–14.

[¶28] There were never any pending criminal proceedings against Mr. Miller with respect to the currency seizure, but courts have extended *$8,850's* discussion of criminal *proceedings* to criminal *investigations*. *See, e.g.*, *United States v. Robinson*, 434 F.3d 357, 365 (5th Cir. 2005) (determining "at least some part of a delay may be excused by an investigation"); *Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 646 (2d Cir. 1989) (explaining that "[b]ecause Mercado presented the appearance of a typical narcotics courier, the Government needed time to investigate and decide" how to proceed with the forfeiture and to explore "[t]he possibility of a grand jury investigation and indictment"); *United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980) in Canadian Currency*, 804 F.2d 1085, 1089 (9th Cir. 1986) (concluding delay for a criminal investigation was justified). At some point, however, the government's interest in

completing an investigation "[is] outweighed by the interests of the claimant in h[is] property." *Matter of One White Jeep Cherokee VIN No. 1J4GZ78Y7TC199455*, 991 F. Supp. 1077, 1085 (S.D. Iowa 1998).

[¶29] Here, the State's evaluation of whether to initiate forfeiture proceedings and the ongoing criminal investigations could justify some of the delay. We are troubled, however, by the State's reliance on the criminal investigations to justify the seven-month delay from November 2013 to June 2014, when the record is clear the State's delay was underpinned from the beginning by its erroneous belief that it had one year to file the action. As early as January 2014, the State told Mr. Miller's counsel that it had one year to initiate forfeiture proceedings. The State asserted the same in its response to Mr. Miller's motion to dismiss, citing Wyo. Stat. Ann. § 1-3-105(a)(v)(D), and at the motion to dismiss hearing.

[¶30] The State's affidavit suggests the State's attorney may not have even retrieved the forfeiture file to start assessing whether to file a forfeiture action until after the January 27 conversation with Mr. Miller's counsel, more than two months after the seizure. From there, the affidavit reflects the State's attorney periodically checked in with state and federal law enforcement regarding their respective investigations. While the affidavit thus explains the *reason* for the delay, it does not adequately explain whether, and if so why, the criminal investigations required so much time and thus made that delay *reasonable*. That void in the affidavit is significant because, combined with the State's erroneous belief about the one-year statute of limitations, it strongly suggests the State had no reason to push for earlier completion of the criminal investigations. In other words, the criminal investigations indifferently filled much of that one-year period. Based on this record, we conclude the criminal investigations could not justify the entire seven-month delay from November 2013 through June 2014.

[¶31] The State sought to justify the second period of delay—from June 27 to August 15, 2014—on the basis that it was waiting for Mr. Miller to accept or reject its settlement offer. Circumstances dictate whether effort to negotiate settlement before filing a forfeiture action is an acceptable reason for delay. *See, e.g, United States v. Real Prop. 35555 Little Mack*, No. 98-1069, 2000 WL 571985, *4 (6th Cir. 2000) (settlement negotiations were an acceptable reason for delay where the government made every effort to move negotiations along but the claimant's attorneys dragged their feet). "Settlement allows the government to mitigate the harsh results that might otherwise follow from forfeiture of 'guilty property,' and to conserve judicial resources." *Id.* The problem with the State's reliance on its settlement offer to justify the additional 45-day delay is that it too was underpinned by the State's belief it had one year to initiate the proceeding. The State extended a settlement offer to Mr. Miller more than seven months after the seizure, and only after it determined the criminal investigations were completed. At that point, while continuing to believe there was no urgency to proceed, the State could not reasonably justify further delay by offering settlement.

10

[¶32]  This brings us to the question of how much weight to assign the second factor.  In the speedy trial context, which is instructive here because the same four-factor test applies, we distinguish "between unnecessary delay which is a 'deliberate attempt to . . . hamper the defense,' and delay resulting from a 'more neutral reason such as negligence[.]'" *Estrada v. State*, 611 P.2d 850, 854 (Wyo. 1980) (quoting *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192).  "'Neutral' unnecessary delay 'should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.'"  *Id.* (citation omitted).

[¶33]  Mr. Miller has never asserted, and the record contains no indication, that the State deliberately delayed instituting proceedings to hamper Mr. Miller's defense.  The unnecessary delay therefore does not weigh as heavily against the State as it otherwise might.  Yet, it still bears significant weight because the State's early and unwavering reliance on the one-year statute of limitation was decidedly unfounded.  Wyoming Statute § 35-7-1049 expressly required that the State institute proceedings "promptly" and § 1-3-105(a)(v)(D) expressly disclaimed any application where, as here, "a different limitation is prescribed in the statute by which the remedy is given[.]"

## C. Claimant's Assertion of His Right

[¶34]  "The third element to be considered in the due process balance is the claimant's assertion of the right to a judicial hearing."  *$8,850*, 461 U.S. at 568, 103 S.Ct. at 2014.  In *$8,850*, the Court explained with respect to a federal forfeiture case that

> [a] claimant is able to trigger rapid filing of a forfeiture action if he desires it.  First, the claimant can file an equitable action seeking an order compelling the filing of the forfeiture action or return of the seized property.  Less formally, the claimant could simply request that the Customs Service refer the matter to the United States Attorney.  If the claimant believes the initial seizure was improper, he could file a motion under Fed. R. Crim. P. 41(e) for a return of the seized property.

*Id.*, 461 U.S. at 569, 103 S.Ct. at 2014 (citation omitted).  There, the third factor weighed against the claimant because she took no action.  *Id.*  Her actions instead "indicat[ed] that [she] did not desire an early judicial hearing."  *Id.*  Here, in contrast, Mr. Miller took informal action to attempt to trigger filing of the forfeiture action.  In January 2014 his counsel told the State he opposed the State's decision not to initiate proceedings until the criminal investigations had been completed.  In June, his counsel expressed to the State his due process concerns about timing.  Under these circumstances we weigh the third factor against the State, though not as heavily as we might have had Mr. Miller sought formal judicial intervention.

### D. Prejudice to the Claimant

[¶35]   The final factor "is whether the claimant has been prejudiced by the delay." *Id.* "The primary inquiry here is whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." *Id.* "Such prejudice could be a weighty factor indicating that the delay was unreasonable." *Id.* In *$8,850*, the claimant "ha[d] never alleged or shown that the delay affected her ability to defend" the action, conceding the forfeiture elements were met. *Id.*

[¶36]   Mr. Miller has never argued the delay prejudiced his ability to present a defense. He has, however, argued prejudice is "fairly apparent and obvious" because he "lost the use" and "the time value" of the currency for nine months. He also asserts that prejudice to his ability to present a defense is of lesser weight than the inherent prejudice resulting from the fact that property was taken away without *any* process whatsoever.

[¶37]   Some courts read *$8,850* narrowly to preclude a claimant from showing prejudice unless he demonstrates prejudice to his ability to present a defense. *See, e.g.*, *United States v. Premises Located at Route 13*, 946 F.2d 749, 756 (11th Cir. 1991) ("The lack of marketability and the inability to buy inventory do not constitute prejudice in the manner proscribed by *$8,850*."); *Cremeans v. Taczak*, No. 2:19-CV-2703, 2019 WL 5420256, at *10 (S.D. Ohio Oct. 23, 2019) ("[T]he burden of being without assets does not address the relevant prejudice inquiry[.]"); *United States v. Thirty-Six (36) 300CC on Rd. Scooters Model WF300-SP*, No. 2:11-CV-130, 2012 WL 4483281, at *6 (S.D. Ohio Sept. 27, 2012) (rejecting the claimant's argument regarding economic prejudice, noting that "in most forfeiture actions a claimant could argue" the seizure caused such damage); *United States v. $3,294.00 in U.S. Currency*, No. 2:05-CV-00998-PGC, 2006 WL 1982852, at *5 (D. Utah July 13, 2006) (rejecting the claimant's argument regarding the financial burden of being without currency); *United States v. Six Negotiable Checks in Various Denominations Totaling One Hundred Ninety One Thousand Six Hundred Seventy One Dollars & Sixty Nine Cents ($191,671.69)*, 207 F.Supp.2d 677, 690 (E.D. Mich. 2002) (rejecting the claimants' argument regarding "their inability to make use of the Defendant property"); *United States v. $199,514.00 U.S. Currency*, 681 F.Supp. 1109, 1113 (E.D.N.C. 1988) ("The deprivation of money, for a reasonable period of time, is not cognizable 'prejudice[.]'"). This narrow reading does not support the prejudice Mr. Miller claims.

[¶38]   However, we conclude such a narrow reading is inconsistent with *$8,850's* prejudice analysis. While *$8,850* identified prejudice to the claimant's ability to present a defense as the *primary* inquiry, it did not identify it as the *only* inquiry. 461 U.S. at 569, 103 S.Ct. at 2014. The Court also recognized that no single factor is "necessary or sufficient" to find unreasonable delay, suggesting that prejudice may not even be necessary depending on the weight of the other factors. *Id.*, 461 U.S. at 565, 103 S.Ct. at 2012. Most notably, the Court recognized that depriving the claimant of $8,850 "for a year and a half is undoubtedly a significant burden." *Id.*

[¶39]  We believe, as other courts have recognized, that a broader prejudice analysis is warranted.  *See State v. Bergstrom*, 2006 ND 45, ¶ 25, 710 N.W.2d 407, 416 (N.D. 2006) (citing *One Black 1989 Cadillac*, 522 N.W.2d at 465) ("The claimant may also show prejudice by showing the State's seizure deprived him of his ownership right to the property."); *State v. One Thousand Nine Hundred Forty-Seven Dollars in U.S. Currency*, 255 Neb. 290, 300, 583 N.W.2d 611, 618 (Neb. 1998) ("adopt[ing] the more flexible approach [to prejudice] advocated by the North Dakota Supreme Court, which allows the claimant to demonstrate prejudice through evidence of financial hardship or undue impairment of the right to use and enjoy the property"); *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162, 166 (5th Cir. 1983) (citing *$8,850*, 461 U.S. at 565, 103 S.Ct. at 2012) (rejecting the government's argument that a claimant could not establish prejudice in cases involving money, citing *$8,850's* recognition that depriving a claimant of a "substantial sum of money for a year and a half is undoubtedly a significant burden"); *United States v. Paris Lopez*, 111 F.Supp.2d 100, 103 (D.P.R. 2000) (citations omitted) ("The Court may also consider the financial burden placed on claimants as a result of the seizure."); *United States v. Sharp*, 655 F.Supp. 1348, 1352 (W.D. Mo. 1987) (noting "prejudice to the defendant can be presumed where he is deprived the use of his property by the government without justifiable cause for a period of twenty-three months").

[¶40]  Mr. Miller relies on one such case, *One Black 1989 Cadillac*, to support his argument that prejudice to his ability to present a defense is of lesser weight than the inherent prejudice which resulted when the State seized his property without any process. Though the North Dakota Supreme Court's decision is not binding on this Court, it is persuasive because of the striking similarities between the applicable North Dakota and Wyoming forfeiture statutes, and that court's sound analysis.  *Compare One Black 1989 Cadillac*, 522 N.W.2d at 460–61, *and* Wyo. Stat. Ann. § 35-7-1049; *Iberlin v. TCI Cablevision of Wyoming, Inc.*, 855 P.2d 716, 726 (Wyo. 1993) ("Where, as in this instance, the words of the statute are materially the same and where the reasoning of the other court interpreting the statute is sound, we do not sacrifice sovereign independence, nor undermine the unique character of Wyoming law, by relying upon the precedent of a foreign jurisdiction.").[6]

---

[6] Both statutes authorize seizure of forfeitable property without process on a probable cause determination. *Compare One Black 1989 Cadillac*, 522 N.W.2d at 460 (quoting N.D.C.C. § 19–03.1–36(2)(d)) ("Property subject to forfeiture under the Act may be seized without process if 'a law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of [the Act].'"), *and* Wyo. Stat. Ann. § 35-7-1049(b)(iii) ("Seizure without process may be made if . . . [t]he board or commissioner has probable cause to believe that the property was used or is intended to be used in violation of this act."). Both statutes require proceedings be instituted "promptly." *Compare One Black 1989 Cadillac*, 522 N.W.2d at 461 (quoting N.D.C.C. § 19–03.1–36(3)) ("The Act directs '[i]n the event of seizure pursuant to subsection 2 [§ 19–03.1–36(2)], proceedings under subsection 4 [§ 19–03.1–36(4)] must be instituted promptly.'"), *and* Wyo. Stat. Ann. § 35-7-1049(c) ("In the event of seizure pursuant to subsection (b) of this section, proceedings under subsection (d) of this section shall be instituted promptly."). The statutes include virtually identical provisions regarding property detainment pending disposition. *Compare One*

[¶41] In *One Black 1989 Cadillac*, the State seized a Cadillac from Mr. O'Rourke without process, pursuant to a law enforcement officer's probable cause determination, because it had allegedly been used to transport marijuana for purpose of sale. 522 N.W.2d at 460. The State began a forfeiture action against the property five and a half months later under North Dakota's Uniform Controlled Substances Act. *Id.* at 459–60. The trial court dismissed the action on summary judgment because the State had not instituted the forfeiture action "promptly" as required by statute. *Id.* at 460. The State appealed. *Id.* The North Dakota Supreme Court interpreted the promptness requirement to be equivalent to the due process requirement under the United States Constitution, evaluated the *Barker* factors as instructed by *$8,850*, and affirmed. *Id.* at 462–66.

[¶42] Addressing the fourth *Barker* factor, the North Dakota Supreme Court determined that Mr. O'Rourke was prejudiced by the delay even though his counsel conceded at oral argument that the State's delay did not prejudice his ability to present a defense. *Id.* at 465. First, the State's seizure of the Cadillac deprived Mr. O'Rourke of his right of ownership over the car, including his right of use and enjoyment, and the right of sale. *Id.* Second, the Cadillac was a wasting asset which diminished in value over time. *Id.* Third, the Cadillac had been seized without *any* prior process, on a law enforcement officer's probable cause determination, thus increasing the risk that the State's seizure was an arbitrary encroachment on his right to property. *Id.*

[¶43] Mr. Miller suffered similar prejudice. The seizure deprived him of his ownership of a substantial sum of money, including his right to use, enjoy, and invest it. *See id.*; *cf. United States v. Approximately $1.67 Million (US) in Cash, Stock & Other Valuable Assets*, 513 F.3d 991, 1002 (9th Cir. 2008) (reasoning the claimant could not "fairly be considered to have been 'deprived of the use of his property' when, prior to the forfeiture action, he did not possess it, have access to it, or have knowledge of its seizure"). Though the currency cannot be characterized as a wasting asset, Mr. Miller's due process rights were further prejudiced because the State seized the currency without process that was available

---

*Black 1989 Cadillac*, 522 N.W.2d at 461 (quoting N.D.C.C. § 19–03.1–36(4)) ("Property taken or detained under this section is not subject to replevin, but is deemed to be in custody of the board or a law enforcement agency subject only to the orders and decrees of the district court having jurisdiction over the forfeiture proceedings as set out in subsection 2 [19–03.1–36(2)]. When property is seized under this chapter, the board or a law enforcement agency may: a. Place the property under seal. b. Remove the property to a place designated by it. c. Require the attorney general to take custody of the property and remove it to an appropriate location for disposition in accordance with law."), *and* Wyo. Stat. Ann. § 35-7-1049(d) ("Property taken or detained under this section shall not be subject to replevin, but is deemed to be in the custody of the commissioner subject only to the orders and decrees of the court having jurisdiction over the forfeiture proceedings. When property is seized under this act, the commissioner may: (i) Place the property under seal; (ii) Remove the property to a place designated by him; or (iii) Require the board to take custody of the property and remove it to an appropriate location for disposition in accordance with law.").

under the 2013 statute,[7] increasing the risk that the seizure was an arbitrary encroachment on his property right. *See One Black 1989 Cadillac*, 522 N.W.2d at 465.

### E. Balancing

[¶44] As noted above, the four-factor test is flexible: we balance Mr. Miller's interests against the State's "to assess whether the basic due process requirement of fairness has been satisfied," keeping in mind that no single factor is necessary or sufficient. *$8,850*, 461 U.S. at 565, 103 S.Ct. at 2012. Here, the scale tips in Mr. Miller's favor, with the first and second factors weighing most heavily against the State. The delay was significant and the State's justification weak. "Although longer delays have been justified in prior cases under *Barker*, those delays have often been due to factors not present here—pending administrative and criminal proceedings, the claimant's own contributions to the delay, or because of the claimant's failure to timely demand return of the property." *Cremeans*, 2019 WL 5420256, at *10 (discussing a twenty-month delay and collecting cases addressing delays of four and a half years, five years, and twenty-nine months).

[¶45] The remaining two factors carry less weight; however, because Mr. Miller objected to the delay and expressed his due process concerns, the third factor also weighs in his favor. As to the fourth factor, Mr. Miller suffered some prejudice under a fair reading of *$8,850*. Because the State's lengthy delay resulted in large part from the its erroneous reliance on the one-year statute of limitations, the prejudice Mr. Miller did suffer was enough to tip the scale in his favor. *See Warner v. State*, 2001 WY 67, ¶ 15, 28 P.3d 21, 27 (Wyo. 2001) (quoting *Doggett v. United States*, 505 U.S. 647, 656–57, 112 S.Ct. 2686, 2693, 120 L.Ed.2d 520 (1992)) ("Between diligent prosecution and bad-faith delay, official

---

[7] The State's contention that "the money was not seized without any process" because the Attorney General made a pre-seizure probable cause finding is belied by the statute on which it relied to seize the currency. There is no question the State relied on § 35-7-1049(b)(iii) to seize the currency. That provision expressly authorized a state law enforcement officer to seize property "without process" on the Attorney General's probable cause determination. Wyo. Stat. Ann. § 35-7-1049(b)(iii). By contrast, subsection (b) authorized a state law enforcement to seize property "upon process issued by a district court or district court commissioner having jurisdiction over the property." Wyo. Stat. Ann. § 35-7-1049(b). The Attorney General's determination could not afford Mr. Miller any form of meaningful or appropriate process under the circumstances where the Attorney General, unlike a district court or district court commissioner, was not a neutral party to the forfeiture action—he was at its helm. *See Vaughn v. State*, 2017 WY 29, ¶ 38, 391 P.3d 1086, 1097 (Wyo. 2017) (quoting *Crofts v. State ex rel. Dep't of Game & Fish*, 2016 WY 4, ¶ 27, 367 P.3d 619, 626 (Wyo. 2016)) ("To 'assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process.'"); *see also* Wyo. Stat. Ann. §§ 9-1-603 (LexisNexis 2019) (defining the general duties of the attorney general), 35-7-1003 (designating the attorney general as "commissioner of drugs and substances control"), 35-7-1049 (describing the attorney general's role in forfeiture proceedings). In fact, the State filed its complaint "by and through the Commissioner of Drugs and Substances Control" (i.e., the Attorney General), and sought the district court's authorization for the Attorney General to retain and dispose of the property as authorized by statute.

negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him."); *see also Cremeans*, 2019 WL 5420256, at \*10 (explaining that where the government's negligence caused delay in bringing a forfeiture action, the claimant's need to prove prejudice diminishes as the delay increases). On balance, under the circumstances of this case, the claimant's interests outweigh the State's—the State did not satisfy the basic due process requirement of fairness to which Mr. Miller was entitled.

## *CONCLUSION*

[¶46]  The State failed to "promptly" institute the forfeiture proceedings, in violation of Wyo. Stat. Ann. § 35-7-1049(c) and Mr. Miller's right to due process under the United States Constitution. We therefore reverse and remand for dismissal with prejudice. The State must return the currency to Mr. Miller.